**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jason Brian VELEZ, Defendant–
Appellant.**

No. 92–3652.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 25, 1993.

Decided July 23, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 2, 1993.

John M. DiPuccio (argued and briefed), Office of the U.S. Atty., Cincinnati, OH, for plaintiff-appellee.

Robert A. Perez (argued and briefed), Cincinnati, OH, for defendant-appellant.

Before: BOGGS and SILER, Circuit Judges; and JOINER, Senior District Judge.*

BOGGS, Circuit Judge.

This is an appeal from a guilty plea on charges of conspiracy to transport falsely made securities, possession of false identification, and use of a false social security number, in violation of 18 U.S.C. § 371. Appellant contends that the district court erred by considering material beyond that contained in the charging information, and that the sentence was improper. For the reasons stated, we affirm.

## I

Appellant was part of a multi-state check writing conspiracy that cashed fraudulent payroll checks in Ohio, Kentucky, Tennessee, West Virginia, North Carolina, South Carolina, and Illinois. The members of the conspiracy would travel to a state, establish a bank account in the name of a fictitious construction company, and obtain fictitious identification using false social security numbers. Checks were then drawn with the payee being one of the names on the false identification cards. The checks were made to look like payroll checks issued by the fictitious company, and grocery stores in small towns were targeted for passing them. The checks were cashed in numerous counties in the hope that no single county jurisdiction would have sufficient losses to pursue prosecution.

* The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

The scheme lasted for approximately two years.

Appellant Velez and two other men, Thomas Cook and Dustin Murray, were members of the ring. However, they decided to strike out on their own. In November 1991, the three men travelled to Iowa City, where they obtained false identification and established a fraudulent company called Hayward Construction. The three men then planned to draw bogus checks on this account. However, following their return to Cincinnati, they were arrested. Federal officials estimated that the entire scheme netted between $149,000 and $184,000. Velez participated in the entire operation, except for the activities that occurred in Kentucky and West Virginia. According to the government, Velez can therefore be tied to causing a loss of $139,000.

The appellant agreed to plead guilty to a one-count information, which charged him with conspiracy to transport falsely made securities, possession of false identification, and use of a false social security number. 18 U.S.C. § 371. The information was based solely on the Iowa endeavor. Velez agreed to assist the government, and the prosecutor agreed to recommend a downward departure. The agreement states that the government's recommendation is not binding on the district court.

Although the government agreed to charge Velez only with the Iowa scheme, the presentence report was not limited to the Iowa activities. Rather, the report discussed the full range of activities, beginning with the check cashing schemes in Ohio, West Virginia, Kentucky, and Tennessee. As previously stated, the full loss from the activities that involved Velez was approximately $139,000. Because this figure exceeded $120,000, appellant received an increase of seven in his offense level. U.S.S.G. § 2F1.1(b)(1)(H).[1] The probation office concluded that the adjusted offense level was 15. The report then recommended a two-level decrease for acceptance of responsibility. U.S.S.G. § 3E1.1(a). Accordingly, the final offense level was 13.

At the sentencing hearing, defendant objected to the presentence report. He claimed that it was improper to look to offenses other than the Iowa scheme. He also attacked many of the factual conclusions, such as the amount of money acquired through the conspiracy. The court agreed with the presentence report, and found that the proper offense level was 13, which results in a sentencing range of 12–18 months, for Velez's criminal history category of 1. The court sentenced the defendant to 15 months, stating, "I should point out that the Guideline for this particular offense would have resulted in imprisonment for a period of 18 months. I will take the United States Attorney's recommendation, and I will reduce his sentence as I have stated."

The next case was called and the defendant left the courtroom. The court then stated:

> Before we proceed ... I want to make a statement as to the previous case, and that is that the court has been advised by the defendant of alleged factual inaccuracies in the presentence investigation report. In accordance with rule 32(c)(2)(D), the court has examined the presentence investigation report and the alleged factual inaccuracies and determines that no finding as to the controverted matter is necessary since the matter controverted has not been taken into account in the sentencing.

The Judgment and Commitment Order prepared by the court stated that appellant's offense level was 13, which established a guideline range of 12–18 months. The Order also states, "The sentence is within the guideline range, that range does not exceed 24 months,[2] and the court finds no reason to depart from the sentence called for by application of the guideline." (emphasis added).

---

1. § 2F1.1(b)(1)(H) provides:
   **Fraud and Deceit**
   (a) ....
   (b) Specific Offense Characteristics
   (1) If the loss exceeded $2,000, increase the offense level as follows
   ....

(H) More than $120,000     add 7

2. This reference pertains to 18 U.S.C. § 3553(c), which requires a "statement of reasons for imposing a sentence" for which the range exceeds 24 months.

The defendant then filed a motion for resentencing, stating that the government's intention was to recommend a downward departure equivalent to a reduction of two levels, based upon appellant's cooperation. The United States filed a document, joining in defendant's motion. On June 19, 1992, the court denied the motion, stating that a downward departure from 18 to 15 months was granted and that the recommendation of the United States was not binding. The defendant then brought this timely appeal.

## II

■ The appellant argues that it was improper for the court to consider criminal acts occurring outside of Iowa because only the Iowa wrongdoing served as the basis for the information, and the plea agreement stipulated that the relevant conduct was limited to the defendant's Iowa activities. We disagree. Under the Guidelines then in effect, the court may consider any activities related to the offense charged. U.S.S.G. § 1B1.3 provided that the base offense level "shall be determined on the basis of ...'all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction...." The activities occurring in other states were part of the same course of conduct.

■ Moreover, this court previously has rejected this same argument. *United States v. Silverman*, 976 F.2d 1502 (6th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1595, 123 L.Ed.2d 159 (1993); *United States v. Miller*, 910 F.2d 1321 (6th Cir.1990), *cert. denied*, 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). In *Miller*, the defendant pled guilty to one count of distributing 1.25 ounces of cocaine. In sentencing the defendant, the trial court looked to drug dealing activities prior to the time of the underlying offense. We stated that under the relevant conduct provision, it was proper for the court to look to activities not charged. The present case is indistinguishable. The illicit activity that occurred in other states was part of the same course of conduct as the Iowa scheme. Additionally, a plea agreement entered into between the government and the defendant is not binding on the court. *United States v. Gaines*, 888 F.2d 1122, 1123 (6th Cir.1989). For these reasons, we reject the defendant's position.

## III

Appellant claims that the court erred regarding the proper sentence, based upon confusion demonstrated in the transcript. He argues that the court claimed to grant a downward departure, when in fact it did not. Appellant claims that this mistake requires a new sentencing.

■ We disagree. A sentence that is within the Guideline range is not appealable on the grounds that the court failed to depart downward. *United States v. Draper*, 888 F.2d 1100 (6th Cir.1989). Indeed, we are without jurisdiction to review any sentence within the guideline range unless the appellant raises a constitutional question. *United States v. Reed*, 914 F.2d 1288 (9th Cir.1990). The sentence in this case is squarely within the guidelines range.

Moreover, the trial court did impose a sentence of less than the upper guideline range of 18 months. Although this reduction is not properly called a "downward departure," the trial court clearly accepted the recommendation of the United States to some degree. The court also was not bound by the government's recommendation, and consequently, no reduction was necessary.

## IV

■ The defendant raised a factual dispute regarding the sentencing report. He claimed that the amount of stolen money that can be attributed to him was $104,000, not $139,000.[3] After the court sentenced the defendant to 15 months, and after the defendant had left the room, the court stated that, in accordance with Fed.R.Crim.P. 32(c)(2)(D), it "ha[d] examined the presentence investigation report and alleged factual inaccuracies and determines that no finding as to the controverted matter is necessary since the matter controverted has not been taken into

---

3. The $104,000 figure assumes that some activity other than the Iowa scheme is included.

account in the sentencing." In the Judgment and Commitment Order, the court stated that it was adopting the findings of the presentence report, which suggested a range of 12–18 months, with an offense level of 13. Appellant contends that by using an offense level of 13, the court did rely on disputed matters, because if he stole $104,000, the offense level would have been 12. Accordingly, appellant requests a resentencing.

The district court did not err. In the Judgment and Commitment Order, the court clearly stated that it "adopts the factual findings" of the presentence report. The defendant failed to offer at any time any evidence to rebut the findings of the probation report that he stole $139,000. The $104,000 figure constitutes mere conjecture, unsupported by any evidence. We accept the trial court's finding (which is amply supported by the record) that the amount stolen was $139,000.

Accordingly, the district court's judgment and sentence is AFFIRMED.