**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Billy TALLEY, Defendant–Appellant.**

No. 97–6528.

United States Court of Appeals, Sixth Circuit.

Argued March 11, 1999.

Decided Oct. 18, 1999.

Lawrence J. Laurenzi (argued and briefed), Asst. U.S. Attorney, Office of the U.S. Attorney, Memphis, TN, for Plaintiff–Appellee.

Arthur E. Quinn (argued and briefed), Bogatin Law Firm, Memphis, TN, for Defendant–Appellant.

Before: MERRITT, KENNEDY, and JONES, Circuit Judges.

## OPINION

NATHANIEL R. JONES, Circuit Judge.

Defendant–Appellant, Billy Talley a former lieutenant in the Shelby County, Tennessee Sheriff's Department appeals following a jury trial finding him guilty of three of the four counts charged against him in a four-count indictment. Now serving a 42–month term for knowingly disposing of a firearm to a convicted felon, among other crimes, Talley challenges his conviction and sentence on eight separate grounds. The primary of those grounds is that the district court erred when it denied Talley's motion for a mistrial premised on the government's prosecutorial misconduct. Although we agree with Talley that the prosecutorial misconduct is this case is indeed troubling, we find a mistrial unwarranted. For the reasons that follow, we also find Talley's seven other suggested errors without merit, and therefore affirm his conviction and sentence.

### I.

The underlying facts of this matter read like a film script. Talley was employed for eighteen years in the Shelby County Sheriff's Department. While there, he rose from deputy jailer to become a lieutenant in the detective division. As a detective, Talley used one Kelvin Marr as an infor-

mant in many of his cases. Marr, a career criminal and prior convicted felon, stole cars and other items, and dealt drugs. Periodically, Marr would be arrested and Talley, to keep Marr as an informant, would come to his aid by having Marr's bond lowered, or by attempting to intervene with prosecutors on Marr's behalf.[1]

At some unspecified time, Talley "crossed the line" between legal and illegal conduct, and became a participant in Marr's criminal activity. Thereafter, Marr continued to be periodically arrested, but Talley's criminal life went undetected.

Marr ultimately tired of the routine of being the only one prosecuted for the crimes he committed along with Talley. When arrested in Memphis in 1995, Marr therefore decided to "rat out" Talley to Memphis police officials, who promptly called in the FBI. Marr ultimately agreed to wear a wire against Talley, and to record their conversations on audiotape. Because Marr was less than precise in his recording technique, however, certain relevant conversations with Talley were not recorded; some audiotapes were lost; and others were recorded over (*i.e.,* erased and destroyed). One destroyed conversation at issue here allegedly involved Talley asking Marr if, in exchange for $3,000, he would be willing to kill the wife of an individual named Fred White. (Talley was never indicted for this crime.)

The conversations which *were* recorded, and which were played for the jury at Talley's criminal trial suggested, *inter alia,* that:

—Talley and Marr stole cars together, including a 1993 Saturn automobile;

—To conceal their car thefts, Talley and Marr replaced valid vehicle identification number ("VIN") tags with VIN tags they had previously stolen. Additionally, they stole a car dealer's license plate, which Talley installed on the Saturn (so as to disguise its stolen status);

—Talley provided Marr with a .25 caliber automatic pistol, which Talley had previously stolen from the Sheriff's Office; and

—Talley sold 75 placebo Dilaudid pills on behalf of Marr, then split the profits with Marr.

When Talley discovered that Marr had "worn a wire" against him, Talley sought to have both Marr and his FBI contact, Ed Young, killed. The assassination plot did not work out as Talley planned, however, because the contract killer that Talley dealt with, Ron Tyler, elected—like Marr—to record his conversations with Talley, and to assist the authorities. As a result, Talley was convicted in the Western District of Tennessee on two counts of solicitation-of-murder in violation of 18 U.S.C. §§ 1114 and 1512. His 170–month incarceration term was upheld by a different panel on appeal. *See United States v. Talley,* 164 F.3d 989 (6th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 1793, 143 L.Ed.2d 1020 (1999).

At issue in this appeal are the crimes that Talley committed with Marr. On February 20, 1996, a federal grand jury, sitting in the Western District of Tennessee, charged Talley in a four-count indictment with: (1) knowingly disposing of a firearm to a convicted felon, in violation of 18 U.S.C. § 922(d) (Count I); (2) unlawfully removing or tampering with the VIN tag to the 1993 Saturn, in violation of 18 U.S.C. § 511 (Count II); (3) possession with the intent to distribute morphine, in violation of 21 U.S.C. § 841(a)(1) (Count III); and (4) attempted possession with the intent to distribute Dilaudid, in violation of 21 U.S.C. §§ 841(a) and 846 (Count IV). Following a five-day jury trial held in July 1997, during which he was represented by counsel, Talley was found guilty of Counts I, II and IV, and not guilty of Count III. Thereafter, Talley was sentenced to a 42–month term, to be followed by three years of supervised release. Tal-

---

1. The legality of such conduct is not before us on review.

ley is now serving the 42–month and 170–month terms concurrently.

## II.

On appeal, Talley argues that the district court made eight distinct errors. Talley argues that the court erred at trial when it: (1) denied his motion for a mistrial; (2) denied his motion for judgment of acquittal; (3) denied his motion to sever the indictment counts; (4) denied in part his motion *in limine;* and (5) used a courtroom sound system in which each juror was given his or her own set of headphones. Talley further argues that the district court erred in sentencing by: (6) applying a two-level enhancement under United States Sentencing Guideline ("USSG") § 3B1.3, for abuse of the public trust; (7) calculating the value of the Count II motor vehicle (the 1993 Saturn) at $13,500; and (8) assigning to him a criminal history category of "II" instead of "I."

### A. Mistrial

Talley's primary contention is that the prosecutorial misconduct by Assistant United States Attorney Lawrence Laurenzi merited a mistrial, and that his motion for a mistrial was therefore wrongly denied.

Talley's mistrial motion was premised upon his earlier-filed motion *in limine.* The *in limine* request was made by Talley's counsel in order to prohibit the government from "informing the jurors of any type of evidence whatsoever of other crimes, wrongs, or acts of the [d]efendant, other than those set out in the indictment...." J.A. at 63. In granting in part and denying in part the motion, the district judge found:

> [THE COURT]: With respect to the motion *in limine* ... the court believes that ... the defense's motion ... ought

to be granted because [the government's evidence] is so highly prejudicial that ... the prejudicial value [of the evidence] would [substantially] outweigh any probative value [it might have].... So the court would exclude the [audio]tapes that relate to those particular categories.... [Also,] I believe Mr. Laurenzi [the AUSA] mentioned something about a conversation about a [solicitation for] murder or something to that effect and [because it is likewise prejudicial, the government's evidence of that crime] *would certainly be excluded.*

J.A. at 92–93 (emphasis added). Laurenzi acknowledged his assent to this ruling by responding, "Yes, Your Honor." *Id.* at 93.

Thereafter, Laurenzi called Marr to testify as a government witness. Despite the court's *in limine* ruling, and his assent to that ruling, Laurenzi proceeded to question Marr, on redirect, about the Fred White murder solicitation, even though that crime was not before the jury for consideration. The following colloquy between Laurenzi and Marr then took place:

[LAURENZI]: You mentioned that ... you destroyed two tapes?

[MARR]: Yes, I did.

*　　*　　*　　*　　*　　*

[LAURENZI]: You say this occurred on two occasions?

[MARR]: Two occasions.

[LAURENZI]: And what were those two parts you cut off?

[MARR]: One [was] when [Talley] asked me to kill ...

[TALLEY'S COUNSEL]: Your Honor ...

[MARR]: Fred White ...[2]

[TALLEY'S COUNSEL]: May we approach the bench?

[THE COURT]: Just a second, Mr. Marr. Mr. Laurenzi, come forward.

---

**2.** Presumably, Marr was about to say "Fred White's wife" when he was interrupted by Talley's counsel.

J.A. at 207–08 (footnote added). A recess was then promptly called, during which the judge met with counsel in chambers. Talley's counsel then orally moved for a mistrial on the grounds that Laurenzi's questioning had (1) violated the judge's *in limine* ruling; and (2) prejudiced the jury against Talley, by informing them that Talley had supposedly solicited Marr's help in killing someone. In denying the motion, the judge reasoned as follows:

> THE COURT: Mr. Laurenzi, I dealt at length with this motion *in limine* that came up on yesterday and I specifically said there was certain testimony that I believed was so highly prejudicial that I wouldn't allow it in[,] even though it might have something to do with something. But I'm not going to belabor this anymore.
>
> First of all, with respect to this motion for mistrial, I am going to deny this motion for the mistrial because even though I heard part of the witness['s] answer, I think I started talking over him and cut that off[,] and I will give the jury [a limiting] instruction on that.
>
> However, Mr. Laurenzi, that does not excuse my dissatisfaction with your having ... elicited this information, and I believe that it is information that is sanctionable. And I will tell you that if you try something like that again in the course of this trial, then I will deal with imposing sanctions on you individually ....
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> But I'm not going to grant a mistrial. But I'm warning everybody, I'm not go-

ing to have these shenanigans through this trial.

J.A. at 214–15.

■ The judge acted correctly in admonishing Laurenzi, and would have been acting within her discretion were she to have sanctioned him. In serving as the AUSA prosecuting this case, Laurenzi had two roles: representative of the United States; and officer of the court. By violating the district judge's *in limine* ruling, Laurenzi breached his obligation to act fairly and impartially in both capacities.[3] An *in limine* ruling, made in a criminal case, serves to ensure that the jury will hear only that evidence which the district judge properly deems admissible. Actions designed to advise the jury of inadmissible evidence seriously undermine the right to a fair trial guaranteed to every criminal defendant by the Sixth Amendment. *See United States v. Davis*, 177 F.3d 552, 556–57 (6th Cir.1999) (noting that the Sixth Amendment requires jurors in criminal trials to be both "impartial" and "indifferent"). Laurenzi's redirect of Marr brought out testimony which Laurenzi knew or should have known would violate both the letter and spirit of the judge's ruling. At oral argument before this panel, Laurenzi appeared remorseful and apologetic. Recognizing that he is an officer of the court, we take him at his word. We also sincerely hope that the disregard he showed for the judge's ruling is unique to him alone, and is not reflective of a manner of trial practice shared by his fellow AUSAs in the Western District of Tennessee.

3. As the Supreme Court has recognized:
   The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.

> He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
>
> *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), *overruled on other grounds, Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

The denial of a motion for mistrial is reviewed for an abuse of discretion. *United States v. Chambers,* 944 F.2d 1253, 1263 (6th Cir.1991). As we recently explained in *United States v. Long,* 190 F.3d 471, 477–78 (6th Cir.1999):

> Generally, a criminal conviction is not to be lightly overturned on the grounds of a prosecutor's statements alone, as the comments or conduct must be viewed in context. *See United States v. Cobleigh,* 75 F.3d 242, 247 (6th Cir.1996). We adopted a two-part test for determining whether prosecutorial misconduct warrants a mistrial in *United States v. Carroll,* 26 F.3d 1380 (6th Cir.1994). First, we determine whether the prosecutor's conduct or comments were improper. Second, we determine whether the impropriety amounts to reversible error either as a "flagrant" impropriety under *United States v. Leon,* 534 F.2d 667 (6th Cir.1976), or because a new trial is required under *United States v. Bess,* 593 F.2d 749 (6th Cir.1979). See *United States v. Wiedyk,* 71 F.3d 602, 607–08 (6th Cir.1995).

A mistrial is not warranted in this case because Talley cannot show that the district judge abused her discretion in denying his motion, or that the *Carroll* two-part test is satisfied. As the judge correctly pointed out, it is questionable whether or not the jury even heard Marr's testimony. Because the judge was then presiding, she was in a much better position at that time than we are now to evaluate what the jury heard or did not hear. In her chambers conference held just minutes after Marr's statement was spoken, the judge indicated her belief that the jury did not hear Marr. As a matter of law, if the jury did not hear Marr's statement, it could not have been prejudiced thereby. We assume the judge was correct in finding that Marr was not heard, given that Talley has presented us with no facts upon which to conclude that the judge's finding constitutes an abuse of her discretion.

Assuming, *arguendo,* that the jury heard Marr's testimony and was prejudiced as a result, that prejudice was ameliorated by the curative instruction the judge gave to the jury. The jury was instructed as follows:

> Members of the jury, just before you took your earlier recess there was a question put to Mr. Marr and a partial response given[.] [T]he Court [interrupted] him in the middle of that statement. I'm going to instruct you to disregard both the question from Mr. Laurenzi to the witness and the question I believe what was on the missing tape, and disregard any partial response that Mr. Marr may have given[.] [T]hat is not information that you may consider in any way[.] [D]isregard both the question and the partial response.

J.A. at 279. We are persuaded both by the language of this instruction, and by the fact that it was given to the jury immediately upon their return from recess (and prior to the completion of Marr's testimony). In light of these circumstances we find, under *Carroll,* that Laurenzi's improper conduct does not constitute reversible error.

### B. Remaining Arguments

Talley's seven remaining arguments are addressed in turn.

### i. Motion for Judgment of Acquittal

Talley first argues that the district court wrongly denied his Fed. R.Crim.P. 29 motion for judgment of acquittal because the evidence was insufficient to sustain his conviction on indictment Counts I, II and IV. The denial of such a motion is reviewed *de novo. See United States v. Keeton,* 101 F.3d 48, 52 (6th Cir.1996). When reviewing a defendant's conviction for sufficiency of evidence, we ask " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.*

(quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) (emphasis in original).

█ Talley cannot satisfy the "sufficiency of evidence" test because of the overwhelming circumstantial evidence of his guilt. *See id.* ("Circumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt.") (citation and quotation omitted). As to Count I—knowingly disposing of a firearm to a convicted felon—the circumstantial evidence, when viewed in the light most favorable to the government, reveals that Marr was a convicted felon and that Talley knowingly supplied him with a .25 caliber pistol. The evidence supporting the Count II and Count IV charges—the VIN tag and Dilaudid offenses, respectively—when viewed in the government's favor, also demonstrates that Talley committed those crimes. Additionally, Talley confessed to the Count IV crime at the time of his arrest.

### ii. Severance

█ A motion to sever indictment counts must be renewed at the close of all the evidence. *United States v. Hudson*, 53 F.3d 744, 747 (6th Cir.1995). When such a motion is not renewed, the severance denial is reviewed for plain error. *United States v. Anderson*, 89 F.3d 1306, 1312 (6th Cir.1996). Talley failed to renew his motion at the close of all the evidence, and no plain error is shown here. Joinder of the four charges in the same indictment was authorized by Fed.R.Crim.P. 8(a), which permits joinder where the charged offenses "constitut[e] parts of a common scheme or plan." *Id.* Fed.R.Crim.P. 14 provides for relief from joinder where prejudice will occur, but Talley has failed to show how joinder at trial made him suffer prejudice.

### iii. *In Limine* Ruling

█ Talley also argues that the district court erred by denying, in part, his motion *in limine* premised on Fed.R.Evid. 404(b). The district court's ruling is reviewed for an abuse of discretion. *See United States v. Phibbs*, 999 F.2d 1053, 1078 (6th Cir.1993). The *in limine* ruling permitted the government to subsequently move for the admission of one or more audiotapes between Talley and Marr—tapes on which the pair discussed, among other topics, their theft of a car dealer's license plate (which Talley later placed on the stolen Saturn). Talley argues that, pursuant to Rule 404(b), the *in limine* motion should have been granted in its entirety, thus barring the admission of the audiotapes.

Rule 404(b) provides in part that, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). The Rule also provides that otherwise excludable evidence is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, [or] knowledge...." *Id.* The court thus did not abuse its discretion, because the audiotaped evidence was admissible to prove Talley's *knowledge* that the Saturn was stolen, and his *intent* to have appearance of the Saturn "legitimized" via installation of the dealer's license plate and the switched VIN tags.

### iv. Headphones

█ The district court's decision on evidentiary matters, such as the manner in which a jury will hear evidence, is also reviewed for an abuse of discretion. *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir.1993). Arguing that the jurors should have listened to audiotaped evidence at trial via one loudspeaker instead of through separate headphones, Talley suggests that the "quality of the headsets could very easily differ[,] resulting in ... one or more juror[s] ... not hav[ing] heard the same thing that other jurors have heard." Talley Br. at 29. There is simply no evidence that such was the case

at Talley's trial. In fact, the evidence suggests that the judge's decision to use headphones was made in an attempt to ensure that the jury properly, and clearly, heard the evidence. *Cf.* Fed.R.Evid. 611(a) (requiring district courts to "exercise reasonable control" over the presentment of evidence). The judge instructed the jury to advise her if anyone experienced technical or hearing difficulties, and no juror did so. Accordingly, we assume there were no sound transmission problems.

### v. USSG § 3B1.3

▮▮▮▮ Regarding his sentencing, Talley first argues that he should not have been given the two-level enhancement provided for by USSG § 3B1.3 for "abuse of the public trust." The district judge's adoption of the enhancement is reviewed *de novo,* and the judge's related factual findings are reviewed for clear error. *See United States v. Watkins,* 994 F.2d 1192, 1195 (6th Cir.1993). The sentencing evidence demonstrated that: (1) Talley worked as a lieutenant in the Shelby County Sheriff's Office at the time he committed the three crimes in question; (2) he used a cooperating police informant (Marr) as his criminal accomplice; and (3) the gun he provided to Marr as part of the Count I offense was stolen from the Sheriff's Office. Talley thus abused his position of public trust, and the enhancement was appropriate. *See United States v. Sivils,* 960 F.2d 587, 599 (6th Cir.1992) (applying § 3B1.3 enhancement to a deputy sheriff who conspired to purchase cocaine).

### vi. Saturn Value

▮▮▮ Talley also challenges the district court's calculation of the retail value of the Saturn automobile used in the Count II VIN tag crime. *See* USSG § 2B6.1(b)(1) (requiring the sentencing judge to calculate the retail value of the Saturn because that value exceeds $2,000.) Using the Probation Department's Pre–Sentence Report ("PSR") for guidance, the district court calculated the retail value of the 1993 Saturn at $13,500. Talley challenges the accuracy of the $13,500 figure, but suggests no competing figure. We are thus unable to determine that the judge was clearly erroneous in relying, as a factual matter, upon the PSR. *Accord United States v. Velez,* 1 F.3d 386, 390 (6th Cir.1993) (properly supported factual findings in PSR control where defendant fails to offer evidence rebutting those findings).

### vii. Criminal History Category

▮▮▮▮ Talley finally argues that the district court erred in assigning him, at sentencing, to a criminal history category of "II" instead of the lesser "I" category. As this is a legal conclusion, our review is *de novo. See Watkins,* 994 F.2d at 1195. Having conducted such a review, we find no error. A category I refers to 0 or 1 criminal history points, whereas a category II refers to 2 or 3 criminal history points. *See* USSG Ch. 5, Pt. A (Sentencing Table). Talley argues that he should not have been assigned criminal history points for having a "prior sentence"—points which "bumped" him from a Category I to a Category II offender—given that the conduct at issue in his prior sentence (for solicitation of murder) occurred, chronologically, after the conduct at issue in this appeal. Recognizing, however, that Talley was sentenced on the solicitation crime *prior to his sentencing for the instant three crimes,* the solicitation crime was, technically, a "prior sentence" meriting consideration by the sentencing judge. *United States v. Beddow,* 957 F.2d 1330, 1337 (6th Cir.1992) (finding "the chronology of sentencing rather than the commission of the crimes is controlling") (internal quotations, citation and brackets omitted); *see also* USSG § 4A1.2(a)(1).

### III. Conclusion

Talley's conviction and sentence, therefore, are both **AFFIRMED.**