UNITED STATES of America,
Plaintiff–Appellee,

v.

Calvin TAYLOR, Defendant–Appellant.

Nos. 00–3127, 00–3128.

United States Court of Appeals,
Sixth Circuit.

July 13, 2001.

Before BOGGS and SUHRHEINRICH, Circuit Judges; and CLELAND, District Judge.*

PER CURIAM.

Defendant Calvin Taylor appeals from his judgment of conviction for conspiracy to distribute cocaine and possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. For the following reasons, we affirm in part and reverse in part.

I

On July 6, 1994, a two-count indictment was entered against Taylor charging him with one count of possession with intent to distribute cocaine and conspiracy to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and one count of interstate travel in aid of racketeering, in violation of 18 U.S.C. § 1952 (Case No. 3:94CR742). On the same day, a separate two-count indictment was entered against Taylor charging him with one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and one count of attempt to possess with intent to distribute cocaine, in violation of 18 U.S.C. § 2 (Case No. 3:94CR743).

Taylor was found guilty after a jury trial in Case No. 3:94CR743. Taylor then pleaded guilty to Count 1 of the indictment in Case No. 3:94CR742. The other count was dismissed on a motion by the prosecution. On November 22, 1996, a plea agreement that covered sentencing for both cases was filed with the district court. Taylor was sentenced to concurrent sentences of 108 months of imprisonment for both cases, the high end of the applicable sentencing guideline range.

On November 24, 1997, Taylor filed motions for post-conviction relief pursuant to 28 U.S.C. § 2255 as to both convictions. On May 15, 1998, Taylor filed an amendment to his petition. The amended petition raised two issues: (1) whether the plea agreement had been breached at sentencing and (2) the effect of the failure of Taylor's trial counsel to file a timely notice of appeal when specifically requested to do so by Taylor. The district court found that Taylor's trial counsel had neglected to follow Taylor's instruction to file a notice of appeal and granted Taylor permission to file such notice. A notice of appeal was filed on January 21, 2000.

II

The dispute in this case turns on the parties' interpretation of the plea agreement that Taylor entered into with the government on November 22, 1996. Among the pertinent provisions are the following:

5. Defendant understands and agrees that he is to be sentenced under the sentencing guidelines provisions in effect on the date his guilty plea is entered. The defendant further understands that a sentencing guideline range for his case will be determined by the Court pursuant to the Sentencing Reform Act of 1984.... The defendant further understands that the Court will impose a sentence within the guideline range, unless the Court finds there is a basis for departure....

6.... The government also agrees to recommend a sentence at the low end of the applicable guideline range.

---

* The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

10. Pursuant to the sentencing factors set forth above, after all reductions and adjustments, the base offense level would be 27, with a guideline range of 87–108 months. Pursuant to Federal Rule of Criminal Procedure 11(e)(1)(C), the government and the defendant agree that the sentence would be within the guideline range.

11. Defendant understands that his guilty plea is being entered pursuant to Federal Rule of Criminal Procedure 11(e)(1)(C), and that the court may accept or reject the recommendations and stipulations contained herein. If the Court accepts this agreement, it will be bound by the recommendations and stipulations set forth herein. However, if the Court rejects this agreement, Defendant will be permitted to withdraw his plea in this case, in which event the Court may immediately proceed to sentence Defendant in Case No. 3:94CR743.

At the outset of the sentencing hearing, the district court stated:

It's my understanding ... that that is a type C [plea] agreement in which I have to indicate whether I accept its provisions, particularly those relating to the sentencing guideline range, and if I do, then I'm bound by those provisions. . . .

The government agreed with this statement as well as the district court's statement that "I can sentence somewhere within—wherever in the range I choose."

The court questioned Taylor to ensure that his guilty plea was knowing and voluntary and Taylor indicated that it was. The court then accepted the plea agreement. At the sentencing phase, the court asked, "And the sentencing guideline range that will apply in this matter will be 87 to 187 months, is that correct?"[1] The

government agreed. Then, the court asked, "I also understand that the government will be making a recommendation at the low end of the range?" The government responded, "That I do not believe was part of the agreement." Taylor's defense counsel stated, "That's in the agreement." The government replied, "Okay. We so make the agreement or the recommendation based upon the written agreement and ask the Court to consider the other recommendations contained herein ." In reply, the court stated, "Okay. Very candidly, I have dealt with these cases, Mr. Taylor, for a long time. What is most troublesome to me, and I'm inclined to sentence at the high end of the range, is the sort of recurrent problems, some serious, not so serious in some instances, during the period of pretrial release." Taylor's defense counsel argued that Taylor should be sentenced to 87 months, the low end of the applicable guideline range. Taylor's counsel did not refer to the provision in the plea agreement indicating that the district court was bound by the "recommendations and stipulations" in the agreement, presumably including the government's recommendation that Taylor be sentenced at the low end of the range. The court stated, "I simply cannot see my way clear to impose a sentence of less that what is maximally available to me. I clearly will accept the plea agreement. I consider it to be an appropriate resolution of all these matters, but beyond that, I simply don't think that it's appropriate for me to be more lenient than the agreement otherwise would call for."

### III

Taylor contends that the government breached the plea agreement by initially

---

**1.** The district court inadvertently stated that the sentencing guideline range was 87 to 187 months. The correct guideline range was 87 to 108 months. Neither party informed the district court of this error. The district court ultimately sentenced Taylor to 108 months of imprisonment, the high end of the guideline range.

refusing to recommend a sentence at the low end of the applicable guideline range and then by making a perfunctory recommendation after being informed that such a provision was in the plea agreement.

### A

Once a district court accepts a plea agreement, this court considers the agreement a contract and analyzes the obligations of the parties under general contract principles. *See United States v. Mandell*, 905 F.2d 970, 973 (6th Cir.1990). What the parties agreed to in a plea agreement presents a question of fact that is reviewed for clear error. *See United States v. Edgecomb*, 910 F.2d 1309, 1314 (6th Cir.1990). Whether the government's conduct violated a plea agreement is a question of law that is reviewed de novo. *See United States v. Wells*, 211 F.3d 988, 995 (6th Cir.2000).

### B

The parties dispute the government's perfunctory recommendation that Taylor be sentenced at the low end of the applicable guideline range.[2] Taylor contends that the fact that the government originally refused to give such a recommendation and then gave a perfunctory recommendation constituted a breach of the plea agreement, which stated that the government shall recommend a sentence at the low end of the guideline range. The government, on other hand, asserts that the government's initial failure to recommend a sentence at the low end of the range was an "oversight" and that the government's perfunctory recommendation was sufficient to cure the mistake and to comply with the plea agreement.

The Supreme Court has stated that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Taylor asserts that the government did not fulfill its promise of recommending a sentence at the low end of the guideline range since it initially refused to recognize its obligation to do so. Taylor's argument is unavailing. Each of the principal cases upon which he relies are distinguishable and none of them stand for the principle that an inadvertent misstatement of the terms of a plea agreement that the government immediately corrects constitutes a breach of a plea agreement.

The primary case upon which Taylor relies is *United States v. Kurkculer*, 918 F.2d 295 (1st. Cir.1990). In that case, the defendant pleaded guilty to three counts of fraud. The plea agreement stated that the government was to recommend sentencing at the low end of the applicable guideline range. In the first session of a three-part sentencing hearing, the government recommended a sentence in accordance with the presentence report, which recommended a higher sentence level. The defendant objected to the prosecution's failure to make a recommendation in accordance with the agreement. After a continuance, the sentencing hearing proceeded a week later at which time the prosecution withdrew the original recommendation and made a recommendation in line with the plea agreement. The district court concluded that there was no breach of the plea agreement and then imposed a

---

2. At Taylor's sentencing hearing, the government initially stated that it did not believe a recommendation to sentence Taylor at the low end of the sentencing guideline range was in the plea agreement. Taylor's defense counsel pointed out the government's error and by doing so sufficiently preserved this issue for review.

sentence at the higher level called for in the presentence report. *Id.* at 297. Unlike in this case, on appeal both the government and the defendant did not dispute that there was a breach of the agreement. The First Circuit agreed stating, "[i]t is clear error to say that no breach ever occurred." *Id.* at 298 n. 5. The court then discussed the appropriate remedy for the breach. The court rejected the government's argument that the breach was corrected with the second recommendation. The defendant objected to this contention on the basis that "the prosecutor's corrected recommendation is ineffective because the judge is aware of the government's 'real' position on the sentencing and will be improperly influenced by the original recommendation." *Id.* at 302. The court sided with the defendant, stating:

> The Court in *Santobello* nowhere suggested that a mere withdrawal of the offending recommendation with substitution of the agreed recommendation would have been a sufficient remedy. While no such attempt was made in *Santobello*, its futility is suggested by the Court's comment that 'at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial. . . . That the breach of agreement was inadvertent does not lessen its impact.' 404 U.S. at 262, 92 S.Ct. 495.

*Kurkculer,* 918 F.2d at 302.

*Kurkculer* is factually distinguishable from this case. In *Kurkculer,* the government affirmatively recommended a sentence that was not in line with the plea agreement the government entered with the defendant. The government did not correct the recommendation after the defendant objected and instead allowed the recommendation to stand for one week before correcting it after the sentencing hearing was continued. In this case, the government initially denied the district court's statement that, "I also understand that the government will be making a recommendation at the low end of the range?" After being informed by defense counsel that the recommendation was in the agreement, the government immediately corrected itself and made the appropriate recommendation. The government did not make an alternative recommendation of a higher sentence, did not refuse to correct itself, and did not allow its misstatement of the plea agreement to stand for one week as in *Kurkculer.* The government's actions did not breach—even inadvertently— the plea agreement it entered with Taylor.

In *United States v. Canada,* 960 F.2d 263, 269 (1st Cir.1992), the court noted that the prosecution only paid "lip service" to a plea agreement that included a recommended 36–month period of incarceration. The court indicated that the prosecutor "failed affirmatively to recommend 36 months, as promised, and she went on to emphasize [the defendant's] supervisory role in the offense and then to urge the judge to impose 'a lengthy period of incarceration' and to send 'a very strong message.'" *Ibid.* The court stated that the prosecutor's references to the plea agreement "were grudging and apologetic." *Ibid.* None of these circumstances occurred in Taylor's case.

Indeed, the legal standards cited by the court in *Canada* help demonstrate that the government's actions in Taylor's case complied with the plea agreement. The *Canada* court noted that "prosecutors need [not] adhere to any particular form of words in 'recommending' an agreed sentence, but [that] their overall conduct must be reasonably consistent with making such a recommendation, rather than the reverse." *Ibid.* Moreover, the court noted that "a prosecutor normally need not present promised recommendations to the court with any particular degree of enthusiasm." *Id.* at 270. In Taylor's case, the

government acted more in compliance with the plea agreement than not since it made the appropriate recommendation and never made an alternative recommendation. The government only briefly indicated that it did not agree to the recommendation before immediately correcting itself after being informed of its mistake. That the government's recommendation was perfunctory and not enthusiastic does not change matters. Taylor's case is vastly different from Canada's, in which the court pointed out that the prosecutor's actions were an "end-run[ ] around [the government's assurances]" and that it was "improper for the prosecutor to inject material reservations about the agreement to which the government has committed itself" and "to cut off the government's agreement at the knees." *Id.* at 269–70.

Finally, in *United States v. Brown*, 500 F.2d 375, 377 (4th Cir.1974), the Fourth Circuit held that a plea agreement was breached where the prosecutor simply stated that the recommendation was being given because "that was part of the plea bargaining" and then stated that "I do have some problems with that, anyhow, but that is the way I understand it." The court concluded that "it is manifest that the consideration which induced defendant's guilty plea was not simply the prospect of a formal recitation of a possible sentence, but rather the promise that an Assistant United States Attorney would make a recommendation on sentencing." *Ibid.* It is true that in Taylor's case, the recommendation was perfunctory, but these circumstances are distinguishable from *Brown*, where the recommendation was half-hearted and where the prosecutor indicated his disagreement with the recommendation.

### IV

■ Taylor argues that the district court erroneously failed to sentence him to the low end of the sentencing guideline range as required by his plea agreement entered pursuant to Federal Rule of Criminal Procedure 11(e)(1)(C). He contends that he reasonably expected the district court to sentence him at the low end of the range in light of paragraph eleven of the plea agreement, which stated:

Defendant understands that his guilty plea is being entered pursuant to Federal Rule of Criminal Procedure 11(e)(1)(C), and that the court may accept or reject the recommendations and stipulations contained herein. If the Court accepts this agreement, it will be bound by the recommendations and stipulations set forth herein. However, if the Court rejects this agreement, Defendant will be permitted to withdraw his plea in this case, in which event the Court may immediately proceed to sentence Defendant in Case No. 3:94CR743.

The district court specifically noted this provision of the plea agreement when it stated at the outset of the sentencing hearing:

It's my understanding ... that that is a type C [plea] agreement in which I have to indicate whether I accept its provisions, particularly those relating to the sentencing guideline range, and if I do, then I'm bound by those provisions....

Since, pursuant to the plea agreement, the government made a recommendation that Taylor be sentenced at the low end of the applicable guideline range, Taylor asserts that the district court was bound by this recommendation and was required to sentence Taylor to 87 months of imprisonment. The district court instead sentenced Taylor to 108 months of imprisonment, the high end of the applicable guideline range.

■ At the sentencing hearing, Taylor did not object to the district court's refusal to be bound by the government's recommendation to sentence Taylor at the low

end of the guideline range. Therefore, our review is for plain error. *See United States v. Malcolm,* No. 95–1087, 1997 WL 311416, at *8, 114 F.3d 1190 (6th Cir. June 11, 1997) ("We believe that the better rule is that, where the defendant failed to object to the alleged breach before the district court, the appellate court may review the claim only for plain error."). To establish plain error, Taylor must demonstrate: (1) that an error occurred in the district court; (2) that the error was plain, *i.e.* obvious or clear; (3) that the error affected Taylor's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir.1998).

First, an error occurred in the district court. The unambiguous terms of the plea agreement indicate that the parties agreed (1) that the government would recommend a sentence at the low end of the applicable guideline range, (2) that the guideline range was 87–108 months, and (3) that if the court accepted the agreement, it would be bound by the "recommendations and stipulations" set forth in the agreement. By accepting the agreement, the district court bound itself to the government's end of the guideline range. If the district court did not agree with the government's binding sentencing recommendation, it was free to reject the agreement. Once the district court chose to accept the agreement, however, the court was required to follow its provisions.[3]

Third, the error affected Taylor's substantial rights since Taylor received a much lengthier sentence of 108 months of imprisonment as opposed to the 87 months of imprisonment that the government recommended.

Finally, the plain error seriously affected "the fairness, integrity or public reputation of judicial proceedings." *Koeberlein,* 161 F.3d at 949. This court has stated that "[o]nce the court unqualifiedly accepts the agreement it too is bound by the bargain." *United States v. Brummett,* 786 F.2d 720, 722 (6th Cir.1986) (quoting *United States v. Holman,* 728 F.2d 809, 813 (6th Cir.1984)). The court, then, must also uphold its obligation since "the law does not permit a criminal defendant to bargain away his constitutional rights without receiving in return either the benefit of his bargain ..., or, if the court rejects that bargain, reinstatement of the rights surrendered...." *Brummett,* 786 F.2d at 722 (quoting *Bercheny v. Johnson,* 633 F.2d 473, 476 (6th Cir.1980)). By not upholding its end of the bargain, the district court committed an error that affected the fairness and integrity of judicial proceedings.

3. We recognize that in 1999, three years after Taylor's sentencing, Fed.R.Crim.P. 11(e)(1)(C) was amended to include language clearly stating, "[a Rule 11(e)(1)(C) ] plea agreement is binding on the court once it is accepted by the court." The addition of this language to the Rule does not indicate, however, that it was not plain prior to 1999 that Rule 11(e)(1)(C) plea agreements were binding. Prior to the 1999 amendment, this court had held that Rule 11(e)(1)(C) plea agreements were binding, based on language in Rule 11(e)(1)(B) indicating that plea agreements made pursuant to that Rule "shall not be binding upon the court." *See Kemper,* 908 F.2d at 36 (implying that Rule 11(e)(1)(C) plea agreement was binding since "there was no understanding that the recommended sentence would not be binding on the district court as required by Rule 11(e)(1)(B)"). The district court itself recognized that binding nature of a Rule 11(e)(1)(C) plea agreement when it stated at Taylor's sentencing hearing that "[this] is a type C [plea] agreement in which I have to indicate whether I accept its provisions, particularly those relating to the sentencing guideline range, and if I do, then I'm bound by those provisions."

## V

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and REVERSED in part. The district court erred in sentencing Taylor at the high end of the applicable guideline range when it was bound to accept the government's recommendation that Taylor be sentenced at the low end of the range. Therefore, Taylor's sentence is VACATED and the case is REMANDED to the district court for further proceedings not inconsistent with this opinion. Upon remand, the district court must determine if it will accept the terms of the plea agreement. If the court accepts the agreement, it is bound by the agreement and all recommendations contained therein. If the court does not accept the agreement, Taylor must be allowed the opportunity to withdraw his plea as required by Fed. R.Crim.P. 11(e)(4).