**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Timothy L. BAKER, Defendant–Appellant.**

**No. 00–6310.**

United States Court of Appeals,
Sixth Circuit.

Aug. 28, 2001.

**224**

Before BOGGS, DAUGHTREY, and FARRIS, Circuit Judges.*

PER CURIAM.

Defendant Timothy L. Baker appeals his conviction and sentence following a guilty plea to conspiracy to distribute and to possess with intent to distribute marijuana and cocaine hydrochloride, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). For the following reasons, we affirm.

I

On January 19, 2000, Baker was indicted on one count of conspiracy to distribute and to possess with intent to distribute marijuana and cocaine hydrochloride, in violation of 21 U.S.C. § 846, and seven substantive counts of distribution and possession with intent to distribute marijuana or cocaine hydrochloride, in violation of 21

U.S.C. § 841(a)(1). Count one of the indictment alleged a conspiracy "beginning on or about November, 1998, and continuing up through the date of the Indictment." The remaining counts alleged distribution occurring on seven specific dates between June 21, 1999 and November 17, 1999. The indictment did not allege specific drug quantities for each count.

On January 20, 2000, the day after the return of the indictment, Baker arranged to purchase one-quarter kilogram of cocaine hydrochloride for $7,200 from an undercover police officer in Townsend, Tennessee. Baker would not meet the officer in Townsend because there was an outstanding arrest warrant for him in Blount County, where Townsend is located. Instead, Baker, accompanied by three other individuals, met the officer in Gatlinburg, Tennessee. Baker entered the officer's vehicle and drove with the officer to Townsend to complete the transaction. Baker stated that he left his money in the car in Gatlinburg. He was then arrested. The police also questioned and released the three other individuals in the car, seizing from one of them $7000 that belonged to Baker.

The day after this incident, January 21, 2000, Baker was arrested for the instant offense. On February 9, 2000, Baker and the government entered into a plea agreement, in which Baker pleaded guilty to count one of the indictment. The agreement including the following language: "defendant will not be further prosecuted in the Eastern District of Tennessee by the United States for any non-tax-related offenses committed by the defendant about which the United States presently has knowledge." The agreement also included a stipulation of facts that detailed the of-

---

* The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

fense conduct and specified the drug quantities involved in each transaction. The stipulation stated that "relevant conduct attributable to the defendant totals at least fifty (50) grams, but less than one hundred (100) grams, of cocaine hydrochloride or marijuana equivalency." The stipulated facts did not include Baker's attempt to purchase one-quarter kilogram of cocaine on January 20, 2000. At the February 9, 2000 plea hearing, the court accepted the agreement but also stated that it was not bound by the agreement.

On May 18, 2000, a presentence report was filed. The report stated that the conduct for which Baker should be held responsible involved at least fifty grams but not more than one hundred grams of cocaine hydrochloride or marijuana equivalency. The report also detailed the drug transactions in which Baker was involved and the quantities involved in each transaction. The last transaction was listed as November 17, 1999. Baker was assigned an offense level of 13 and a criminal history category of IV, with the applicable guideline range being 24 to 30 months.

The prosecutor handling the case later provided reports concerning the January 20 incident to both Baker and the probation officer who prepared the presentence report. The probation officer concluded that the one-quarter kilogram of cocaine that Baker attempted to purchase on January 20, 2000, should be included as relevant conduct, increasing Baker's guideline range from 24 to 30 months to 46 to 57 months. The revised report assessed an offense level of 22, based upon a total of 64.04 kilograms of marijuana equivalency. With a three-level reduction for acceptance of responsibility, the total offense level was assessed at 19. The revised report also included the following statement regarding the plea agreement:

The plea agreement provides that the relevant conduct attributable to the defendant totals at least 50 grams, but less than 100 grams, of cocaine hydrochloride or marijuana equivalency. However, information provided by the government after the disclosure of the original presentence report indicates that the defendant was involved in a drug transaction not described in the factual basis filed with the Court. The quarter-kilogram of cocaine involved in this transaction increases the base offense level by six levels. If sentenced pursuant to the factual basis filed with the Court, the total offense level would be 13 and the guideline range of imprisonment would be 24 to 30 months.

Baker objected to the revised presentence report, arguing that the plea agreement and stipulation of facts prevented the government from relying on facts relating to the January 20, 2000 arrest. The government informed the district court that the omission from the stipulated facts of the one-quarter kilogram of cocaine relating to the January 20, 2000 incident was a mistake; the police reports regarding the one-quarter kilogram incident were received at a later time; and the reports were submitted to the probation officer because they were relevant. The government stated that "the fair thing to do is let [Baker] withdraw his plea and start back clean if that's what he wants to do."

The district court entered an order overruling Baker's objections to the presentence report. The court stated that Baker acknowledged during his February 9, 2000 plea hearing that his maximum sentence could be 327 months of imprisonment if his previous criminal history was serious enough to qualify him as a career offender. The court indicated that although the government stipulated to relevant conduct totaling less than one hundred grams of

cocaine hydrochloride, the court was entitled to consider the one-quarter kilogram of cocaine as foreseeable relevant conduct. Although Baker did not make a formal motion to withdraw his guilty plea, the district court stated that it "does not believe it would be in the interest of justice to allow the defendant to withdraw his guilty plea...."

At the sentencing hearing on September 6, 2000, Baker renewed his objection to the revised presentence report. The district court did not reconsider its earlier ruling. It imposed a sentence of 46 months, the lowest permitted under the applicable guideline range, followed by six years of supervised release. Baker filed a timely notice of appeal.

## II

Once a district court accepts a plea agreement, this court considers the agreement a contract and analyzes the obligations of the parties under general contract principles. *See United States v. Mandell,* 905 F.2d 970, 973 (6th Cir.1990). What the parties agreed to in a plea agreement presents a question of fact that is reviewed for clear error. *See United States v. Edgecomb,* 910 F.2d 1309, 1314 (6th Cir.1990). Whether the government's conduct violated a plea agreement is a question of law that is reviewed de novo. *See United States v. Wells,* 211 F.3d 988, 995 (6th Cir.2000).

## III

### A

Baker argues that the government breached its plea agreement with him by relying on information regarding the post-indictment January 20, 2000 drug offense to support an increase in the offense level at which Baker was sentenced. Baker notes that the plea agreement included

language stating that Baker would not be prosecuted for offenses that the government had knowledge of at the time of the agreement. In addition, Baker points out that the stipulated facts did not include the January 20, 2000 incident and stated that Baker would be held responsible for between 50 and 99 grams of cocaine hydrochloride or marijuana equivalency. Baker contends that the government caused him to be held responsible for more than the 99–gram upper limit set forth in the stipulation of facts when it gave reports regarding the 250–gram drug offense on January 20, 2000 to the probation officer preparing Baker's presentence report. The probation officer recommended an increase in Baker's offense level as a result of this information, which the district court accepted at sentencing. Baker claims that by giving the probation officer the information on the January 20, 2000 incident, the government in effect prosecuted Baker for an offense that the government had knowledge of at the time of the plea agreement.

Baker relies on *United States v. Mondragon,* 228 F.3d 978, 981 (9th Cir.2000), in which the court held that a plea agreement, which included a promise that the government would not make a recommendation regarding sentencing, was breached when the prosecutor commented on the evidence in a manner that encouraged the district court to impose a harsher sentence.

In addition, Baker cites *United States v. Tucker,* No. 97–4123, 1998 WL 795111 (4th Cir. Nov.17, 1998) (unpublished table decision). In *Tucker,* the Fourth Circuit, applying a plain error standard, held that the government breached a plea agreement where the government stipulated that the total relevant conduct was a certain amount of crack cocaine and then at sentencing supported a recommendation in

defendant's presentence report cross-referencing the homicide guideline since the defendant had used a firearm in another offense that resulted in death. The court stated that given the fact that the government agreed to stipulate to certain relevant conduct:

> the plea agreement required the government to take no position on the probation officer's recommendation that the cross-reference be applied. The district court would have been free to decide whether the [probation officer's] recommendation was correct and to apply the cross-reference if it saw fit, *see* USSG § 6B1.4(d), p.s. (sentencing court not bound by stipulations), but Tucker would have received the benefit of his bargain.

Id. at *3.

### B

Baker's arguments demonstrate neither that the district court erred in relying on information relating to the January 20, 2000 incident, nor that the government breached the plea agreement.

### 1

The district court did not err by taking into consideration the facts relating to the January 20, 2000 incident. Several sections of the United States Sentencing Guidelines have been applied in previous cases with similar facts to permit a district court to consider other offenses as evidence of relevant conduct, even though they were not included in a stipulation of facts.

*United States v. Velez*, 1 F.3d 386, 387–88 (6th Cir.1993), concerned a defendant who was involved in a multi-state check writing conspiracy. The government agreed to charge the defendant with illegal conduct occurring only in the state of Iowa, a fact stipulated to in the plea agreement. *See id.* at 388–89. The presentence report included facts relating to check cashing schemes in Ohio, West Virginia, Kentucky, and Tennessee. *See ibid.* The district court overruled the defendant's objection to the presentence report, which objection was based on the report's including as relevant conduct information that was in violation of the parties' agreement. *See ibid.*

This court affirmed, citing USSG § 1B1.3, which states that a defendant's base offense level "shall be determined on the basis of . . . all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction. . . ." *Id.* at 389. The court determined that the activities that occurred in the other states were part of the same course of conduct as the Iowa scheme and that therefore the district court was entitled to take it into account those activities as other relevant conduct. *See ibid.*

In *United States v. Woods*, 907 F.2d 1540, 1542 (5th Cir.1990), the district court accepted a plea agreement in which the parties stipulated to the amount of drugs attributable to the defendant as relevant conduct. At sentencing, the district court chose not to accept the stipulation of facts on the basis it was inaccurate since it did not include a quantity of illegal drugs found on the defendant's person and at his laboratory. *See ibid.*

The Fifth Circuit affirmed, relying on the language of USSG § 6B1.4(d), p.s., which states that "[t]he court is not bound by the stipulation, but may with the aid of the presentence report, determine the facts relevant to sentencing." *See Woods*, 907 F.2d at 1542. The court determined that the district court was entitled to base the defendant's sentence upon an amount of drugs significantly larger than the

amount charged in the indictment and stipulated to by the parties in their plea agreement. *See ibid.* The *Woods* court, like the *Velez* court, also relied upon USSG § 1B1.3, noting language that the district court can consider "all acts or omissions . . . for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction." *Id.* at 1543. It also cited the commentary to that section, which states that the district court should consider "conduct in furtherance of the conspiracy that was known to or reasonably foreseeable by the defendant." *Ibid.*

■ The district court did not err in this case. First, according to USSG § 6B1.4(d), p.s., the stipulation of facts was not binding on the district court. Therefore, the district court was entitled to rely upon the information relating to the January 20, 2000 incident, which was not included in the stipulation of facts. Second, according to USSG § 1B1.3, a defendant's base offense level "shall be determined on the basis of . . . all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction. . . ." In determining Baker's base offense level, the district court was therefore required to take into account all acts that were part of the conspiracy offense to which Baker pleaded guilty.

**2**

■ Baker is also unable to demonstrate that the government breached its plea agreement with Baker.

First, with regard to the provision in the agreement that "defendant will not be further prosecuted in the Eastern District of Tennessee by the United States for any non-tax-related offenses committed by the defendant about which the United States presently has knowledge," Baker has not demonstrated that he was "further prosecuted." The government supplied the information relating to the January 20, 2000 offense to the probation officer on the basis that it could be considered relevant conduct related to the precise offense for which Baker was prosecuted and to which Baker pleaded guilty: conspiracy to distribute, and to possess with intent to distribute, marijuana and cocaine hydrochloride in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).

Second, Baker is unable to demonstrate that the government contradicted information agreed to in the stipulation of facts. This case is unlike *Tucker*, in which the government specifically agreed with a recommendation of the probation officer that contravened the amount of relevant conduct to which the government stipulated. In this case, the government did not explicitly agree with the probation officer's conclusion in the revised presentence report, nor did it advocate that the district court accept the probation officer's recommendation. Rather, the government did the opposite, admitting its mistake and suggesting that Baker be allowed to withdraw his plea:

> THE COURT: Mr. Folmar, you say you just made a mistake; is that right?
>
> MR. FOLMAR: Well, but the police reports came in later. And even though I had stipulated to the plea agreement, I submitted them to probation because I'm not going to hide the evidence from probation or from the Court. So I sent it right over there, and probation felt like it changed the amount of relevant conduct.
>
> And I think the fair thing to do is let him withdraw his plea and start back clean if that's what he wants to do.

The government did not advocate a position that contravened the plea agreement that the government and Baker entered into. At most, the government gave the probation officer information that it—and the district court—were legitimately entitled to take into account. *See Wasman v. United States,* 468 U.S. 559, 563, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984) ("The sentencing court or jury must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed."). Moreover, Baker's counsel agreed at oral argument that the government did not do anything wrong by giving this information to the probation officer.

One of the cases upon which Baker relies, *Mondragon,* demonstrates that the government's actions in this case did not violate the plea agreement. In *Mondragon,* the Ninth Circuit held that the government breached a plea agreement that stated that "[t]he United States Attorney will make no recommendation regarding sentencing." 228 F.3d at 980. The court concluded that the government breached the agreement by calling the court's attention to the allegedly serious nature of the defendant's prior offenses—offenses about which the district court was already aware. The court concluded that the government, by stressing the serious nature of these offenses, was making a recommendation on sentencing. *See id.* at 980–81.

The *Mondragon* court distinguished *United States v. Read,* 778 F.2d 1437, 1441 (9th Cir.1986), which involved a plea agreement with similar language. In that case, the government informed the district court, by letter, of criminal acts allegedly committed by the defendant after she pleaded guilty. The court held that the government did not breach the plea agreement because "[t]he plea agreement did

not obligate the Government to withhold factual information concerning events occurring *subsequent* to Read's conviction, events of which the sentencing judge could not be aware from review of the record." *Id.* at 1442. The facts of this case, in which the government informed the probation officer and district court of other relevant conduct are more similar to the permissible actions in *Read* than the impermissible actions in *Mondragon.* The government therefore did not breach its plea agreement with Baker.

C

Finally, we note that even though the government recommended to the district court that Baker be allowed to withdraw his plea agreement, Baker has not requested such relief below or before us. Instead, he argues that he should be sentenced to 24 to 30 months of imprisonment since this amount of imprisonment comports with the stipulated facts in his plea agreement. However, by agreeing to a stipulation of facts, Baker and the government were not agreeing to a fixed sentence. If Baker wanted a fixed sentenced imposed as a result of his plea agreement, he should have requested a plea agreement pursuant to Fed.R.Crim.P. 11(e)(1)(C), in which the government and the defendant agree that a specific sentence or sentencing range is appropriate and the district court is bound to impose that sentence if it accepts the plea agreement. *See United States v. Taylor,* 14 Fed.Appx. 546, 551 (6th Cir. 2001) (unpublished table decision).

IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.