**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Bobby M. KEETON (95–6086) and Kim G. Davis (95–6087), Defendants–Appellants.**

**Nos. 95–6086, 95–6087.**

United States Court of Appeals,
Sixth Circuit.

Submitted Sept. 24, 1996.

Decided Nov. 22, 1996.

Victor L. Ivy (briefed), Office of the U.S. Attorney, Jackson, TN, for U.S. in No. 95–6086.

Lindsey M. Davis and Donald E. Holt (briefed), Holt, McKenzie, Holt & Mussleman, Florence, AL, for Bobby M. Keeton.

Robert M. Johnson (argued and briefed), Memphis, TN, for Kim G. Davis.

Victor L. Ivy (argued and briefed), Office of the U.S. Attorney, Jackson, TN, for U.S. in No. 95–6087.

Before: MARTIN, Chief Judge; CONTIE, Circuit Judge; CARR, District Judge.*

CONTIE, Circuit Judge.

Kim Davis and Bobby Keeton challenge their drug trafficking convictions. We affirm.

### I.

On December 8, 1994, a drug-sniffing dog alerted to a large crate at the Central Freight Lines terminal in Pharr, Texas. The crate, packaged to look like it held a juke box, was addressed to Juan Ortiz at 235 South Second Street in Savannah, Tennessee. Local law enforcement officers subsequently secured and executed a search warrant which

revealed approximately 437 pounds of marijuana.

On or about December 12, 1994, Drug Enforcement Administration ("DEA") officers replaced the marijuana with cinder blocks, resealed the crate, and transported it to the Averitt Express terminal in Jackson, Tennessee, where Tennessee Highway Patrol Officers Daniel Wilson and Wendell Miller were posing as dock hands. On December 15, 1994, Officers Wilson and Miller observed a red four-door automobile and a blue two-toned pickup truck turn onto a street adjacent to the Averitt Express terminal; the automobile led the pickup truck. The pickup truck was driven by Juan Ortis–Ramires, and the automobile was driven by defendant-appellant Kim Davis. Ramone Loya, William Thompson and defendant-appellant Bobby Keeton accompanied Davis in the automobile.

Ortis–Ramires then drove the pickup truck to the Averitt Express lot to retrieve the crate. As the crate was loaded into the pickup truck, the undercover officers watched Davis make evasive and suspicious turns and stops while waiting for Ortis–Ramires. Davis then drove the automobile to a dead-end street near Averitt Express and waited for Ortis–Ramires. After exiting the Averitt Express lot with the crate, Ortis–Ramires drove to the dead-end street where the men in the automobile were waiting. Davis then drove the automobile, with the pickup truck following, several miles to Crump, Tennessee, where both vehicles turned into Davis' father's driveway. Ortis–Ramires immediately exited the pickup truck, and Davis, Keeton and Thompson exited the automobile and walked to the pickup truck. Law enforcement officers immediately moved in and arrested the men.

Following the arrests, law enforcement officers discovered: that Loya possessed the crate's original bill of lading; that Loya rented the car that Davis drove; that Loya's address book (found in the automobile) contained Davis' name and telephone numbers; and, that Ortis–Ramires drove Keeton's pickup truck to retrieve the crate notwithstand-

* The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

ing Keeton's assertion that he did not know Ortis–Ramires. The officers seized Davis' cellular telephone and cash ($72), and Keeton's pickup truck and cash ($15,245). The $15,245 seized from Keeton was forfeited to federal authorities; the pickup truck, cellular telephone and $72 were forfeited to state authorities. Keeton and Davis failed to file claims for the seized property.

On January 3, 1995, Keeton, Davis, Thompson, Ortis–Ramires and Loya were charged in a three-count indictment. Count One charged the men with conspiracy to possess with intent to distribute marijuana, and conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count Two charged the men with aiding and abetting the possession of approximately 227 kilograms of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count Three charged Ortis–Ramires, an illegal alien, with an immigration violation pursuant to 8 U.S.C. § 1326.

Prior to trial, Keeton asserted that the seizure and forfeiture of his pickup truck and cash constituted a "prosecution" for double jeopardy purposes barring his subsequent criminal prosecution. The district court rejected Keeton's claim. On May 8, 1995, Ortis–Ramires pled guilty to the crimes charged in the Indictment. That same day, the remaining defendants' trial began. On May 11, 1995, the district court granted Thompson's motion for judgment of acquittal. On May 12, 1995, the jury found Davis, Keeton and Loya guilty of the conspiracy charged in Count One of the Indictment. On August 2, 1995, the district court sentenced Davis and Keeton to sixty-eight-month terms of imprisonment, to be followed by four-year terms of supervised release. Keeton filed a timely notice of appeal claiming that the forfeiture of his cash ($15,245) by federal authorities precluded his subsequent criminal prosecution on double jeopardy grounds. Davis filed a timely notice of appeal claiming that his conviction was not supported by sufficient evidence.

## II.

### Double Jeopardy

When arrested, Keeton possessed $15,245 cash and owned the 1994 Chevrolet pickup truck driven by Ortis–Ramires. Federal authorities seized and forfeited Keeton's cash; state authorities seized and forfeited Keeton's pickup truck. State authorities also seized and forfeited Davis' cellular telephone and cash.

On appeal, Keeton asserts that his criminal conviction must be reversed pursuant to the Double Jeopardy Clause of the Fifth Amendment because his conviction followed the seizure and forfeiture of his cash by federal authorities. Though Davis attempted to join in Keeton's double jeopardy claim prior to sentencing, Davis concedes that he "has no double jeopardy claim at present," pursuant to the separate sovereignty doctrine, because his property was forfeited to state, not federal, authorities. Appellant Davis' Brief at 6.

In response to the appellants' double jeopardy claim, the United States asserts that jeopardy did not attach to either appellant because Davis and Keeton failed to contest the forfeitures, and because Davis' double jeopardy claim and Keeton's double jeopardy claim with respect to the forfeiture of his pickup truck are barred by the principles of dual sovereignty. We agree.

■■■ The parties properly note that successive prosecutions for violating the laws of two separate sovereigns do not violate the Double Jeopardy Clause. *Heath v. Alabama,* 474 U.S. 82, 88–89, 106 S.Ct. 433, 437–38, 88 L.Ed.2d 387 (1985). *See also United States v. Andersen,* 940 F.2d 593, 596 (10th Cir.1991) (a defendant may be convicted in federal court and state court for the same underlying conduct). Because Keeton's pickup truck and Davis' property were forfeited to state authorities, Davis' double jeopardy claim and Keeton's double jeopardy claim with respect to his pickup truck must be rejected.

■■■ Moreover, the district court properly noted that the appellants were not placed in jeopardy by the forfeiture proceedings because they failed to assert ownership of the seized property. *See United States v. Baird,* 63 F.3d 1213, 1218–19 (3d Cir.1995) ("It

should be clear from this description of the 'attachment' concept that jeopardy does not, and cannot, attach until one is made a *party* to a proceeding before a trier of fact ... and that, until such time, the constitutional double jeopardy prohibition can have no application. Because Baird failed to contest the forfeiture, he never became a party to any judicial proceeding, criminal or civil.") (footnote omitted), *cert. denied,* —— U.S. ——, 116 S.Ct. 909, 133 L.Ed.2d 841 (1996); *United States v. Arreola–Ramos,* 60 F.3d 188, 192–93 (5th Cir.1995) ("Absent a trial, a party, and a punishment, jeopardy can never attach. As Arreola did not appear and contest the forfeiture, he was never in jeopardy. Without former jeopardy, double jeopardy cannot arise.") (footnotes omitted); *United States v. Torres,* 28 F.3d 1463, 1465 (7th Cir.) ("Torres received notice inviting him to make a claim in the civil forfeiture proceeding. He did not. As a result, he did not become a party to the forfeiture.... As a non-party, Torres was not at risk in the forfeiture proceeding, and 'without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.'") (citations omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994). *See also Langford v. United States,* 91 F.3d 143 (6th Cir.1996) (unpublished) ("[T]he district court properly rejected Langford's double jeopardy argument because he did not file a claim of ownership in the civil forfeiture proceeding."). Because the appellants failed to contest the civil forfeitures, their criminal prosecutions are not barred by the Double Jeopardy Clause.

Moreover, in *United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), the Supreme Court held: "[C]ivil forfeiture does not constitute punishment for the purpose of the Double Jeopardy Clause. Congress long has authorized the Government to bring parallel criminal proceedings and civil forfeiture proceedings, and this Court consistently has found civil forfeitures not to constitute punishment under the Double Jeopardy Clause." *Id.* at ——, 116 S.Ct. at 2147.

Accordingly, we reject the appellants' double jeopardy claims.

### Sufficiency of the Evidence

■ Davis asserts that his conviction is not supported by sufficient evidence:

> There was no evidence at all that Davis (or any other defendant) knew the crate had contained marijuana, and ample evidence that its one-time contents could not be discerned by anybody. Davis' conviction was based solely on inference upon inference upon inference, implanted in the jury by a government theory which had no evidentiary basis whatever. That Davis drove a business associate's rented car to show the way to a truck terminal and back, because he knew the way and others didn't, and had previously given that associate his phone numbers, cannot justify a guilty verdict even if Loya, his associate, was involved somehow in a drug deal.

Appellant Davis' Brief at 9 (citations omitted). In response, the United States asserts that Davis' conviction is supported by sufficient evidence:

> The jury saw the evidence in this case: the large crate, the 437 pounds of marijuana, the photos of the maroon sedan and blue pickup truck, the original bill of lading that Loya had in his pocket when arrested, the diagram showing the driving pattern of Davis, Loya's address book with Davis' phone numbers in it, the rental agreement for the maroon car and numerous other exhibits. The jury also heard the live testimony of witnesses....

> The government submits that a reasonable juror could have concluded that the timing of the arrival of the crate, the arrival of defendant Juan Ortis–Ramires from North Dakota, the arrival of Ramone Loya from Texas, Bobby Keeton with $15,000, Loya and Davis conducting $14,000 worth of rooster business the day before, Davis' driving behavior, Bobby Keeton loaning his truck to a total stranger and Loya having the original bill of lading in his pocket all contributed to proving the conspiracy.... The jury weighed all of the evidence and

concluded that there was a conspiracy and that Kim Davis was a member of it.

Appellee's Brief at 18–19.

 The district court's refusal to grant a motion to acquit is a legal question that we review *de novo*. *United States v. Gibson,* 896 F.2d 206, 209 (6th Cir.1990). We must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). Circumstantial evidence alone, if "substantial and competent," may support a verdict and need not "remove every reasonable hypothesis except that of guilt." *United States v. Stone,* 748 F.2d 361, 363 (6th Cir. 1984). Moreover, the granting of a motion to acquit "will be confined to cases where the prosecution's failure is clear." *Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978) (footnote omitted).

Davis asserts that the evidence arrayed against him establishes little more than his presence near drugs and his association with drug traffickers. Though mere proximity to drugs does not establish guilt, *United States v. Pena,* 983 F.2d 71, 72–73 (6th Cir.1993), the evidence arrayed against Davis goes well beyond mere proximity to drugs. Specifically, the record reveals that Davis drove Keeton, Loya and Thompson to the Averitt Express terminal in Jackson, Tennessee, in a rented automobile as Ortis–Ramires followed in Keeton's pickup truck. After both vehicles stopped on a dead-end street adjacent to the Averitt Express terminal, Ortis–Ramires drove the pickup truck to the terminal to retrieve the drugs. Davis, meanwhile, drove the automobile in a very suspicious and unusual manner while waiting for Ortis–Ramires to return with the crate. After retrieving the crate, Ortis–Ramires drove the pickup truck to the dead-end street where he and Davis spoke briefly; Davis then led Ortis–Ramires to his father's house. After the vehicles pulled into Davis' father's driveway, Davis exited the automobile, walked to the pickup truck and climbed in before being arrested.

Because we conclude that any rational trier of fact could have found the essential elements of Davis' crime beyond a reasonable doubt after viewing the evidence in the light most favorable to the prosecution, we reject Davis' insufficiency of the evidence claim.

Accordingly, we **AFFIRM**.