*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0087p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

    *v.*

JASON HINES (03-6622); KELLY EDWARDS (03-6624),
      *Defendants-Appellants.*

Nos. 03-6622/6624

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 02-00215—Curtis L. Collier, District Judge.

Submitted: February 1, 2005

Decided and Filed: February 7, 2005[*]

Before: COLE and CLAY, Circuit Judges; HOOD, District Judge.[**]

_____

## COUNSEL

**ON BRIEF:** D. Mitchell Bryant, Cleveland, Tennessee, T. Clifton Harviel, Jr., HARVIEL LAW OFFICE, Memphis, Tennessee, for Appellants. Paul W. Laymon, Jr., ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

_____

## OPINION

_____

    R. GUY COLE, JR., Circuit Judge. This is a direct appeal of two related drug-trafficking cases. Pursuant to a jury trial, Defendants-Appellants Jason Hines and Kelly Edwards were convicted of conspiracy to distribute 500 grams or more of methamphetamine. On appeal, Hines and Edwards claim various trial errors. Hines also seeks vacation of his sentence under *Blakely v. Washington*, 542 U.S. __ (2004) and *United States v. Booker*, 543 U.S. __ (2005), on the ground that the Sentencing Guidelines violate the Sixth Amendment. For the following reasons, we **AFFIRM** in all respects the conviction and sentence of Kelly Edwards; as to Jason Hines, we **AFFIRM** his conviction, but **VACATE** and **REMAND** for re-sentencing consistent with *United States v. Booker*.

---

[*] This decision was originally issued as an "unpublished decision" filed on February 7, 2005. The court has now designated the opinion as one recommended for full-text publication.

[**] The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

# I.

Jason Hines and Kelly Edwards were central participants in one of the largest drug trafficking organizations in Tennessee. Hines and another co-conspirator, James "Red" Fowler, were the primary contact with Mexican sources of methamphetamine and cocaine in Eastern Tennessee. Hines supplied Fowler with methamphetamine for over two years, until Fowler began developing his own Mexican sources. Hines and Fowler trafficked in large amounts of methamphetamine and cocaine. Testimony establishes that Hines and Fowler purchased as much as 10 to 20 pounds of methamphetamine at a time, and one kilogram of powdered cocaine. Hines and Fowler disbursed these large amounts of drugs quickly, selling at least several pounds of methamphetamine in a month. The amounts of money involved were similarly large: testimony establishes that Fowler would typically pay Hines $ 30,000 at one time for the purchase of drugs.

After procuring large amounts of drugs from the Mexican sources, Hines and Fowler would then sell smaller lots to other drug dealers. For example, Kelly Horton, a drug dealer in Cleveland, Tennessee, typically would purchase a pound of methamphetamine from Fowler, for $9,500, and then sell individual ounce bags for $1,400. At another time, Horton purchased four ounces from Hines. Gary Jenkins, a drug dealer in Chattanooga, Tennessee, purchased large amounts of methamphetamine and cocaine from both Fowler and Hines. Jenkins purchased two to four pound lots of methamphetamine and a kilogram of cocaine from Fowler, and similar amounts from Hines. Jenkins would then distribute the methamphetamine to street dealers who worked for him in Chattanooga. Jenkins also purchased a hunting rifle from Hines.

Kelly Edwards was employed by Red Fowler in the drug operation. Edwards worked on cars in a garage owned by Fowler, which was located on Fowler's property. Edwards assisted Fowler in hiding, delivering, and selling the methamphetamine. Edwards also purchased methamphetamine directly from the Mexican sources.

Eventually, federal and state agents broke the back of the conspiracy, resulting in about a dozen arrests, beginning with Red Fowler. Hines and Edwards were indicted several months later for conspiracy to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. § 846 (conspiracy), and § 841(a)(1) and (b)(1)(A) (drug trafficking). Most of the co-conspirators agreed to plead guilty, including Fowler, but Hines and Edwards elected to exercise their right to a jury trial. At trial, 14 co-conspirators, including Fowler, testified as to Hines's and Edwards's involvement in the conspiracy. Several officers also testified as to their involvement. There was little or no physical evidence at trial; the evidence largely involved the testimony of co-conspirators and arresting officers. The jury convicted both Hines and Edwards.

After trial, Hines filed a motion for a new trial and motion for judgment of acquittal, and Edwards filed a motion for a new trial. The district court denied these motions.

At sentencing, the district judge determined that Hines had possessed approximately 32 pounds of methamphetamine during the course of conspiracy. The district judge also determined that Hines was subject to a firearm enhancement. Accordingly, Hines was sentenced to 235 months of incarceration and five years of supervised release. Edwards was sentenced to the statutory minimum – 120 months incarceration and five years supervised release.

Defendants-Appellants appeal their convictions and sentences, arguing various trial and sentencing errors. After briefing was concluded, *Blakely v. Washington,* 542 U.S. __ (2004), was issued, and Hines submitted an additional brief seeking re-sentencing pursuant to that opinion. Subsequently, *United States v. Booker*, 543 U.S. __ (2005), was issued, resulting in a substantial change in jurisprudence regarding the Sentencing Guidelines. Briefing on the *Booker* issue was completed shortly thereafter.

## II.

Edwards seeks reversal of his conviction on the basis of the following alleged trial errors: (1) that the district court improperly restricted cross-examination of a Government witness; (2) that the Government improperly commented on his failure to testify; (3) that the jury instructions for the conspiracy count were erroneous; and (4) that the cumulative effect of these errors resulted in an unfair trial.

## A.    Cross-Examination under Fed. R. Evid. 609

At trial, defense counsel attempted to cross-examine Fowler regarding his prior felony convictions. Edwards argues the district court limited the scope of cross-examination, apparently in response to an objection by the prosecution.  The short colloquy is as follows:

Q. [Mitchell Bryant, defense counsel].  Mr. Fowler, you have prior felony convictions, don't you, sir?

A. [Fowler].  When, I was young, 17 years old.

Q. Not as an adult?

A. No other felony convictions, no.

Q. Okay.  Burglary, Whitfield County, 1987?

A. Seventeen.

Q. You were 17 then?

A. Yeah.  Sentenced under the Youthful Offender Act.

Q. Okay. Some charge called criminal interference with government that you got 12 months for?

Mr. Piper [AUSA].  Objection, Your Honor, if Mr. Bryant is going to read from the NCIC I would respectfully request that he at least be aware it's A; it's either a crime of falsehood or dishonesty or B; it's proper impeachment with a felony within the previous 10 years. Obviously, Mr. Fowler is not trying to hide anything with respect to this, but I don't believe Mr. Bryant is allowed to go on a fishing expedition with respect to cross-examination.

Mr. Bryant. Your Honor, I'm looking at the information that was provided to me by the government from pre-trial services.  I'm trying to figure out what are felonies and what are not.  There are three pages of them here.

Mr. Piper.  Judge I object to that, and Mr. Bryant knows better than that.  And I can --

The Court.  Why don't you move on to another subject, Mr. Bryant.

Mr. Bryant.  Sir?

The Court.  Just move on to another subject.

Mr. Bryant.  Yes, sir.

A district court's limitation of cross-examination is reviewed for an abuse of discretion. *See United States v. Green*, 202 F.3d 869, 873 (6th Cir. 2000).  Under Federal Rule of Evidence 609(a), the credibility

of a witness other than the accused may be attacked by admitting evidence of a prior conviction under certain circumstances.  Generally speaking, only prior felony convictions less than ten years old, and prior convictions of a crime of dishonesty or false statement are permitted.  *See* FED. R. EVID. 609(a)-(b). Furthermore, juvenile convictions are generally inadmissible to attack the credibility of an adult witness who is not the accused, unless the evidence "is necessary for a fair determination of the issue of guilt or innocence."  FED. R. EVID. 609(d).

Given these standards, there was no error.  As an initial matter, the district court did not specifically limit the cross-examination of Fowler.  Rather, based on a suggestion from the Court, defense counsel apparently self-regulated his questioning regarding Fowler's prior felony conviction.  Under such circumstances, it is unclear if the district court exercised its discretion in limiting the testimony.

Even if we accept that the district court limited the cross-examination, there was still no error. Testimony by Fowler establishes that his only prior felony conviction was as a juvenile, the evidence of which is generally inadmissible.  This was noted in open court before the jury, and there was no apparent limiting instruction; accordingly, the jury had at least some evidence of Fowler's felony criminal history. To the extent that evidence of other, unmentioned convictions was excluded, no evidence establishes that such convictions are admissible under Rule 609.  Accordingly, this argument cannot support reversal.

## B.    Comments on Failure to Testify

During the testimony of Detective Patrick Cook, the Government noted that Kelly Horton did not testify in his own defense in a prior unrelated case in which he had been acquitted.  Defense counsel did not object to this comment.  The relevant section of the testimony is as follows:

Q.  And what was the item?

A.  It was a package containing about two ounces of what tested out to be methamphetamine.

Q.  And Mr. Horton went to trial on this?

A.  Yes sir, he did.

Q.  And was he convicted or acquitted?

A.  No, sir, he was acquitted on it.

Q.  On the methamphetamine?

A.  Yes, sir.

Q.  He didn't take the stand at the trial?

A.  No, sir, he did not.

The prosecution apparently made no other comments regarding any other witness's failure to testify.

The admission of unchallenged testimony is reviewed for plain error.  FED. R. CRIM. P. 52(b); *United States v. Kelly*, 204 F.3d 652, 655 (6th Cir. 2000).  An error is plain if: (1) there was an error under current law; (2) the error was plain, i.e. clear or obvious; and (3) the error affected substantial rights, i.e., it must be prejudicial.  *United States v. Rogers,* 118 F.3d 466, 471-72 (6th Cir.1997).  Even if the first three requirements are shown, a case warrants the exercise of discretion to correct that error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings."  *Id.* at 473.  Under the Fifth Amendment, the Government may not comment on a criminal defendant's decision not to testify.  *Bagby*

*v. Sowers*, 894 F.2d 792, 797 (6th Cir. 1990). Indirect comments on a failure to testify require reversal only if "the comments were manifestly intended by the prosecutor as a comment on the defendant's failure to testify or were of such a character that the jury would naturally and reasonably take them to be comments on the failure of the accused to testify." *Id.* at 797-98 (citation omitted).

Here, the Government's comment on the failure to testify in an unrelated trial is directed towards Kelly Horton, a co-conspirator witness, and not the accused. No evidence indicates that the Government intended the comment as a statement concerning Edwards's lack of testimony. Nor does the single, short comment from the Government appear to be connected to the instant case.

In any event, even if the comment could be imputed against Edwards, admission of the evidence must still be plainly erroneous. Under the third element of a plain error analysis, the error must be prejudicial such that it has a substantial effect on the rights of the accused. *Rogers,* 118 F.3d at 472. Furthermore, this Court should exercise its discretion to reverse only if the error affects the "fairness, integrity, or public reputation" of this case. *Id.* at 473. Evidence of Edwards's participation in the conspiracy was overwhelming, and included the testimony of 14 co-conspirators. Accordingly, the district court did not plainly err in allowing testimony regarding Kelly Horton's failure to testify.

## C.     Jury Instructions as to Conspiracy

Edwards also argues that the jury instructions for conspiracy were so erroneous as to require a new trial. The relevant portion of the district court's jury charge regarding conspiracy is as follows:

> A conspiracy is a kind of criminal partnership. For you to find the defendants guilty of the conspiracy charge, the government must prove both of the following elements beyond a reasonable doubt:
> First, that two or more persons conspired, or agreed, to commit the crime of distributing methamphetamine.
> Second, that the defendants knowingly and voluntarily joined the conspiracy . . . .
> With regard to the first element – a criminal agreement – the government must prove that two or more persons conspired, or agreed, to cooperate with each other to commit the crime of distributing methamphetamine . . . .
> If you are convinced that there was a criminal agreement, then you must decide whether the government has proved that the defendants knowingly and voluntarily joined that agreement.
> This does not require proof that the defendants knew everything about the conspiracy, or everyone else involved, or that they were a member of it from the very beginning. Nor does it require proof that the defendants played a major role in the conspiracy, or that their connection to it was substantial. A slight role or connection may be enough.
> But proof that the defendants simply knew about a conspiracy, or were present at times, or associated with members of the group, is not enough, even if they approved of what was happening or did not object to it . . . .
> What the government must prove is that the defendants knew the conspiracy's main purpose, and that they voluntarily joined it intending to help achieve or advance its goals, this is essential.

Since defendants did not object to the jury charge at trial, we review for plain error. *United States v. Morrow*, 977 F.2d 222, 226 (6th Cir. 1992). A circuit court must view the jury charge as a whole to determine whether it fairly and adequately submits the issue and law to the jury. *See United States v. Newcomb*, 6 F.3d 1129, 1132 (6th Cir. 1993).

Here, the instructions on conspiracy were not plainly erroneous. The district court's instructions essentially tracked the language and organization of the Sixth Circuit Pattern Jury Instruction regarding conspiracy. *See* SIXTH CIRCUIT PATTERN JURY INSTRUCTIONS §§ 3.01(A)-3.04. The district court properly omitted the element requiring an overt act in furtherance of the conspiracy, since an overt act is not required for the purposes of 21 U.S.C. § 846. *United States v. Shabani*, 513 U.S. 10, 11 (1994) (holding that Congress eliminated the overt act requirement in drug conspiracy cases).

We recognize that the elements of a § 846 conspiracy are: "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999). Though the district court did not explicitly require the participation element, it did explain that "A slight role or connection may be enough" to determine that the defendants had joined the conspiracy. Viewing, as we must, the jury charge as a whole, such language was sufficient to avoid plain error.

This holding is buttressed by the overwhelming evidence that Edwards was an essential participant in the conspiracy. Fourteen co-conspirators testified that Edwards was an employee of Fowler, and participated in the procurement, storage and delivery of large amounts of methamphetamine. Given this evidence, the error did not affect the "substantial rights of the accused," or the "fairness, integrity or public reputation of judicial proceedings." *Rogers,* 118 F.3d at 472-73.

## D.     Cumulative Effect

Edwards also argues that the cumulative effect of these errors support a new trial, even if individually such errors do not warrant reversal. Edwards notes that the cumulative effect of individual errors may result in a trial setting that is fundamentally unfair. *See Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983).

While in some situations cumulative error might be enough to support reversal, this is not such a case. As noted above, the district court's limitation of Fowler's cross-examination and the Government's comments on Horton's failure to testify cannot be considered evidentiary error. Accordingly, the only arguable error by the district court was the failure to include the participation element in the jury charge for conspiracy. For the aforementioned reasons, this error is insufficient to support reversal.

### III.

On appeal, Hines seeks reversal of his conviction and a new sentencing, arguing that: (1) there was insufficient proof to support the conviction; and (2) the district court erred in determining the amount of drugs and the imposition of a firearm enhancement. In supplemental briefing, Hines also argued that his sentence violated the Sixth Amendment under *Blakely* and *Booker.*

## A.     Sufficiency of the Evidence

Hines argues that the district court erred in denying his motion for judgment of acquittal or a new trial, since the evidence was insufficient to support his conviction. Hines notes that no drugs or firearms were found in his possession at the time of the arrest. Hines further notes that evidence of drug trafficking activity at trial consisted solely of the testimony of co-conspirators, all of whom had received favorable treatment from the Government based on their plea agreements, or promises to cooperate.

We review a motion for judgment of acquittal *de novo*, examining "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also United States v. Keeton*, 101 F.3d 48, 52 (6th Cir. 1996). We review for an abuse of discretion a district court's denial of a motion for a new trial based on the weight of the evidence. *See United States v. Pierce*, 62 F.3d 818, 825 (6th Cir. 1995).

Here, the district court's denial of a motion for acquittal or new trial is not error. Circumstantial and testimonial evidence are sufficient to support a jury finding of conspiracy. *See United States v. Price*, 258 F.3d 539, 544 (6th Cir. 2001); *Keeton*, 101 F.3d at 52. Here, 14 co-conspirators testified in a consistent and detailed manner that Hines was a major supplier of methamphetamine in Tennessee, routinely buying and selling very large amounts of drugs over a long period of time. Furthermore, the lack of physical evidence is not an indication of the strength or weakness of the case. It is undisputed that Hines was arrested and indicted several months after the initial arrest of Fowler and other co-conspirators. Therefore, it is reasonable to assume that Hines would cleanse his residence of any evidence pointing to his involvement in the conspiracy, such as drugs, guns, or money. Given this overwhelming amount of evidence of guilt, the district court did not err in denying the motion for judgment of acquittal or new trial.

## B.    Sentencing Enhancements and *Booker*

Hines also appeals the district court's findings that he was responsible for approximately 32 pounds of methamphetamine pursuant to U.S.S.G. § 2D1.1(c), and that he had used a firearm in connection with the drug crime pursuant to U.S.S.G. § 2D1.1(b).

Prior to *Booker*, we reviewed for clear error a district court's factual findings regarding the amount of drugs attributable to the defendant or whether he possessed a firearm. *United States v. Bartholomew*, 310 F.3d 912, 923 (6th Cir. 2002) (amount of drugs); *United States v. Johnson*, 344 F.3d 562, 565 (6th Cir. 2003) (possession of a firearm). Consistent testimony from co-conspirators established that Hines was an active and major drug supplier, regularly moving several pounds of methamphetamine a month to regional drug dealers over the course of several years. Given this testimony, the district court's finding that 32 pounds of methamphetamine was attributable to Hines is, if anything, a conservative estimate. As to the firearms enhancement, Hines himself admits to possessing firearms during the period of his drug-trafficking activity. Accordingly, under U.S.S.G. § 2D1.1, commentary n.3, Hines was required to establish that it was clearly improbable that the firearms were used in connection with the offense. Though Hines argues that the firearms were used solely for hunting, evidence suggests that the firearms may have served a dual purpose. Hines sold a firearm to another drug dealer, and apparently displayed his firearms in a gun cabinet with a glass-door in his residence, where some of the drug deals likely occurred.

Although the district court's factual findings are supported by the record, Hines is nonetheless entitled to re-sentencing under *Booker*. In *Booker*, the Supreme Court held that under the Sixth Amendment "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. __, slip op. at 20 (Stevens J., for the Court). Given this Sixth Amendment right, the Sentencing Guidelines no longer have the force and effect of law and are "effectively advisory." *Id.*, slip op. at 2 (Breyer, J., for the Court).

Significant guidance as to Hines's sentence may be found under the facts of *Booker*. In *Booker*, the jury found the defendant had possessed 92.5 grams of crack cocaine. *Id.,* slip op. at 2 (Stevens, J. for the Court). After conviction, the district court then found that the defendant possessed an additional 566 grams of crack cocaine, and sentenced him commensurate with the Guidelines. *Id.*, slip op. at 3 (Stevens, J., for the Court). On appeal, the Seventh Circuit held that the Guidelines violated the Sixth Amendment. *Id.*

The Supreme Court affirmed the Seventh Circuit. In particular, the Supreme Court noted:

> In respondent Booker's case, the District Court applied the Guidelines as written and imposed a sentence higher than the maximum authorized solely by the jury's verdict. The Court of Appeals held *Blakely* applicable to the Guidelines, concluded that Booker's sentence violated the Sixth Amendment, vacated the judgement of the District Court, and remanded for new sentencing. We affirm the judgment of the Court of Appeals and remand the case. On remand, the District Court should impose a sentence in accordance with today's

opinions, and, if the sentence comes before the Court of Appeals for review, the Court of Appeals should apply the review standards set forth in this opinion.

*Id.*, slip op. at 24-25 (Breyer, J., for the Court).

There is no meaningful distinction between Hines's sentence and Booker's sentence, at least for the purposes of the Sixth Amendment. Based on the indictment and the jury verdict form, the jury found that Hines had possessed more than 500 grams of methamphetamine. However, at sentencing, the trial judge found that Hines had possessed approximately 32 pounds of methamphetamine. Though substantial evidence supports the district court's finding, that conclusion occurred under the prior sentencing regime. The same analysis also applies to the district court's firearms enhancement.

The Government argues that re-sentencing under *Booker* is inappropriate since Hines "never argued that the Guidelines or the procedures used to determine Guidelines factors are unconstitutional under *Apprendi* or the . . . Sixth Amendment." However, this is not entirely accurate. Shortly after the issuance of *Blakely*, Hines filed a supplemental brief arguing that the district court's factual findings violated the Sixth Amendment, effectively preserving this issue for appeal. *United States v. Cordoza-Estrada*, 385 F.3d 56, 59 (1st Cir. 2004) (noting that supplemental letter briefing filed shortly after issuance of *Blakely* was sufficient to preserve the issue for appeal).

Since, however, Hines raised no *Apprendi*, Fifth Amendment, or Sixth Amendment claims in district court, the Government correctly notes that Hines must hurdle the requirements of plain error. *See also id.* (noting that though the defendant preserved the *Blakely* issue with the filing of a supplemental letter brief shortly after the issuance of that opinion, plain error is still the correct review given that no such claims were made in the district court); *United States v. Hughes*, No. 03-4172 , — F.3d —, slip op. at 10 (4th Cir. Jan. 24, 2005) (noting that *Blakely* and *Booker* issues raised for the first time on appeal must be reviewed for plain error); *Booker*, 543 U.S. __, slip op. at 24-25 (Breyer, J., for the Court) (encouraging appellate courts to apply a "plain error" analysis in determining whether re-sentencing is appropriate).

The Government argues that there was no plain error since Hines's substantial rights were not affected by the district court's factual findings, and there was therefore no prejudice. *See Rogers*, 118 F.3d at 472 (noting that the third element of a plain error analysis requires that substantial rights are effected by the error, such that there is prejudice). In particular, the Government notes that the jury heard evidence establishing that Hines: (1) was responsible for 5 to 15 kilograms of methamphetamine; and (2) possessed a firearm during the relevant time period. The Government then claims that since the jury convicted Hines, such evidence must have been accepted by the jury, and any error was harmless.

This argument ignores the impact and applicability of *Booker*. As an initial matter, the fact that the jury heard such evidence is immaterial. The only factual finding by the jury memorialized in the record indicates that Hines possessed 500 grams or more of methamphetamine. "It is not the province of this Court to divine the jury's interpretation of the evidence . . . ." *S.E.C. v. Yun*, 148 F. Supp. 2d 1287, 1297 (M.D. Fla. 2001); *see also Booker*, 543 U.S. __, slip op. at 3 (Stevens, J., for the Court) (noting that the jury's finding of "500 or more  grams" of cocaine on the verdict form determined the amount of drugs for sentencing before the district court). Where the jury memorializes a specific factual finding, such as the amount of drugs possessed by Hines, we will adhere to that finding. And where the jury made no finding, such as with Hines's possession of a firearm, it is improper to speculate.

In any event, the Government's view of an effect on the substantial rights of Hines is unduly limited. As noted by the remedial majority, *Booker* returns substantial discretion to the sentencing judge to depart above and below the Guidelines range, so long as such sentences are reasonable. *Id.* at 21-22 (Breyer, J., for the Court) ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing); *id.* at 19 (noting that a Court of Appeals should review post-*Booker* sentences for "reasonableness"). Remand is the only appropriate way, in this case, to allow the

parties to argue for the exercise of the district court's discretion as authorized by *Booker*. *Id.* at 25 (Breyer, J., for the Court) (remanding Fanfan's case despite the fact that his sentence did not violate the Sixth Amendment, in order to allow the Government the opportunity to seek a higher sentence); *Hughes*, No. 03-4172 , — F.3d —, slip op. at 14 n.8 ("[T]he determination of reasonableness depends not only on an evaluation of the actual sentence imposed but also the method employed in determining it.")  Indeed, as noted by Chief Judge William Wilkens of the Fourth Circuit, and the Commission Chair of the United States Sentencing Commission from 1984 to 1995, an appellate court's presumption that re-sentencing would result in the same, or a substantially similar sentence, "would be tantamount to performing the sentencing function ourselves."  *Hughes*, No. 03-4172 , — F.3d —, slip op. at 14 n.8.  As appellate courts should review – and not determine – the decisions of the district court, we must vacate and remand for re-sentencing.

## IV.

For the foregoing reasons, we **AFFIRM** the conviction and sentence of Kelly Edwards in all respects; **AFFIRM** the conviction of Jason Hines in all respects; and **VACATE** and **REMAND** the sentence of Jason Hines for proceedings consistent with this opinion and *United States v. Booker, supra.*