**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0224n.06

**No. 08-5376**

**FILED**
**Apr 09, 2010**
LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| TERRELL JILES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE: SILER and ROGERS, Circuit Judges; BELL, District Judge.**[*]

**PER CURIAM.** On October 4, 2007, a jury in the Western District of Tennessee convicted Defendant-Appellant Terrell Jiles of one count of conspiracy in violation of 18 U.S.C. § 371 and six counts of wire fraud in violation of 18 U.S.C. § 1343. This matter is before the Court on Jiles's appeal of his conviction on the ground that the government failed to present sufficient evidence to support the verdict. For the reasons that follow, we **AFFIRM** the conviction.

**I. BACKGROUND**

_____

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

Thrifty Auto Sales ("Thrifty") is a used car dealership in Memphis, Tennessee. Thrifty was experiencing business problems in 2001, and Thrifty's owner, Russell Robinson, hired James Butler to investigate them. Upon review of Thrifty's sales records, Mr. Butler concluded that Thrifty had been selling cars in a monthly volume that far exceeded the volume sold by car lots of comparable size. He thus launched an intensive investigation into the suspicious sales pattern.

In 2001, many of the finance companies that provided loans to Thrifty's customers were sub-prime lenders. Generally, a customer seeking a sub-prime loan required a minimum monthly income of $1,200. Mr. Butler's investigation revealed that the loan applications completed by many of Thrifty's customers listed a monthly income that in itself was not sufficient to qualify the customer for a sub-prime loan. In these cases, however, the loan applications were often supplemented by verification letters from the Social Security Administration ("SSA") indicating that the customer was receiving social security payments in an amount sufficient to put his or her monthly income above the $1,200 threshold.

Mr. Butler concluded that many of the SSA verification letters were forged. He informed the Memphis office of the FBI of his findings, and Sergeant Frank Amato, a member of the Financial Crimes Task Force, initiated his own investigation.

Soon thereafter, Charles Monger, a Thrifty salesman, confessed to an elaborate scheme to defraud lending companies involving more than thirty individuals. Mr. Monger advised Sgt. Amato that every salesman at Thrifty had been purchasing forged

documents—social security verification letters, driver's licenses, check stubs, and tax returns—from various third parties to ensure that customers would be approved for sub-prime loans. If the customer received a loan and then defaulted, the finance company would bear the loss, and the salesman would realize the commission for the sale, provided the customer paid the first monthly installment. A salesman would occasionally pay the first monthly installment out of his own pocket to ensure that the scheme would succeed.

According to the sales records, Jiles was one of the top salesmen at Thrifty. Six transactions in which he was involved appeared particularly suspicious to Sgt. Amato: (1) the Constance Jackson loan on March 9, 2001; (2) the Mattie White loan on March 16, 2001; (3) the Ahmad Walton loan on May 3, 2001; (4) the Robert Collins loan on June 2, 2001; (5) the Cleopatra Barnes loan on June 16, 2001; and (6) the Ahmad Walton loan on February 9, 2001. Upon interviewing the loan recipients, Sgt. Amato concluded that Jiles had used forged documents and fraud to procure sub-prime loans on each occasion.

Jiles was indicted by a federal grand jury on April 6, 2006, for one count of conspiracy in violation of 18 U.S.C. § 371, and six counts of wire fraud in violation of 18 U.S.C. § 1343 in connection with each transaction identified above.[1] After a jury trial held from October 1 through 4, 2007, he was convicted on all seven counts. On March 5, 2008, he was sentenced to sixty months of incarceration for each of the seven counts, to be served

---

[1]Jiles used a fax machine to transmit the fraudulent applications to lending institutions outside of Tennessee, thus satisfying the "interstate commerce" requirement of the criminal provisions.

concurrently, and nine years of supervised release. On March 14, 2008, Jiles filed a valid Notice of Appeal. On appeal, Jiles argues that the evidence introduced at trial was not sufficient to support the verdict.

## II. LAW AND ANALYSIS

When reviewing an insufficiency-of-evidence claim, this Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "The *Jackson* standard requires [the Court] to view both circumstantial and direct evidence in a light most favorable to the prosecution." *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002). "Circumstantial evidence alone, if 'substantial and competent,' may support a verdict and need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Keeton*, 101 F.3d 48, 52 (6th Cir. 1996) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)). Moreover, "[i]n addressing sufficiency of the evidence questions, this Court has long declined to weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury." *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir. 1994). Jiles challenges the sufficiency of the evidence with regard to all seven counts for which he was convicted.

*A. The Six Wire Fraud Counts*

No. 08-5376
*United States v. Jiles*

A person is guilty of wire fraud if he transmits by means of wire in interstate commerce any writings for the purposes of executing a scheme to defraud. 18 U.S.C. § 1343. Jiles first argues that the evidence supporting the six wire fraud counts was insufficient because the government did not introduce any witnesses who saw him prepare, or participate in the preparation of, false documents. (Appellant's Br. 10, 11, 12.) However, even if the witness testimony cannot support the inference that any witnesses actually saw Jiles prepare fraudulent loan applications, an abundance of circumstantial evidence supports the jury's determination that he prepared fraudulent loan applications. First, the trial testimony indicates that, with regard to several of the loan transactions, Jiles directly told the applicant that he would falsify the loan documents. (*United States v. Jiles*, Case No. 2:06-cr-20117-JPM (W.D. Tenn.), Dkt. No. 76, Trial Tr. I, at 20, 31, 47, 54, 84-85.)[2] Second, with regard to each of the six transactions for which Jiles was convicted, witnesses testified that Jiles was the salesperson who took control of the transaction and helped the customer complete the loan application,[3] and that the loan application, when received by the financing company,

_____

[2]Hereinafter, docket number 76 of the district court docket sheet is referred to as "Trial Tr. I," and docket number 77 is referred to as "Trial Tr. II."

[3]Jiles argues that the evidence was particularly insufficient for the jury to conclude that he was the salesman that assisted Ahmad Walton because Mr. Walton's ex-wife, Latonya Walton, testified that a white male assisted Mr. Walton, and Jiles is black. (Appellant's Br. 12.) In fact, however, Mrs. Walton testified that the white male who assisted her husband seemed to be a manager, not a salesman, who had come in only when problems with the transaction arose. (Trial Tr. I, at 174.) Mr. Butler testified that Jiles was the salesman who handled Mr. Walton's loan applications. (Trial Tr. I, at 156-58.)

contained false and fraudulent information that Jiles knew to be untrue. This circumstantial

evidence permits the logical inference that Jiles prepared and transmitted fraudulent loan

applications to defraud the financing companies on each occasion. *See Keeton*, 101 F.3d at

52 (noting that circumstantial evidence alone may support a verdict).

Jiles next argues that the evidence supporting the six wire fraud counts was

insufficient because loan applications signed by each customer contained a clause stating that

the information in the application was accurate and correct. (Appellant's Br. 11.) Jiles is

attempting to challenge the credibility of the witnesses who testified that information

contained in the loan applications is false by arguing that such testimony conflicts with

representations contained in the loan applications themselves that the information is true.

This Court, however, may not consider the credibility of a witness in assessing the

sufficiency of evidence against a defendant. *Ferguson*, 23 F.3d at 140. The testimony of the

witnesses that the information in the loan applications is false, *see supra* note 4, even if it did

conflict with representations contained in the loan applications themselves, is sufficient to

support the jury's determination that Jiles submitted falsified information to the financing

companies.

*B. The Conspiracy Count*

A conspiracy exists when "two or more persons conspire . . . to commit any offense

against the United States." 18 U.S.C. § 371. Jiles argues that the evidence supporting the

conspiracy count was insufficient because, although most of the salesmen at Thrifty were part

of a team, there is no evidence that he was part of a team. (Appellant's Br. 11, 12.) Jiles argues that since he operated individually, he cannot be convicted of conspiracy.

The government presented evidence that forged documents, such as tax returns, were used in connection with loan applications prepared by Jiles. (Gov't App'x 50-51, 55.) Witnesses also testified that forged documents were not created on site, but were prepared by third parties. (Trial Tr. I, at 186-87 (Gatewood testimony), 205-07 (Monger testimony).) Thus, the government presented evidence that two parties—Jiles and the unknown source from which he obtained forged documents—conspired to commit an offense against the United States—the use of a fax machine to transmit forged documents across state lines for the purpose of obtaining money. *See* 18 U.S.C. § 1343. Even though the government did not present evidence that Jiles was part of a sales team at Thrifty, the evidence is sufficient to support the conspiracy conviction.

## III. CONCLUSION

The Court is satisfied that the government presented sufficient evidence for a rational juror to find the essential elements of the six wire fraud counts and the conspiracy count beyond a reasonable doubt. Accordingly, Jiles's conviction is **AFFIRMED**.