NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0803n.06

No. 09-6120

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Dec 02, 2011*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,           )
                                    )
    Plaintiff-Appellee,             )
                                    )
v.                                  )  ON APPEAL FROM THE UNITED
                                    )  STATES DISTRICT COURT FOR THE
GRAY M. DOTSON,                     )  WESTERN DISTRICT OF TENNESSEE
                                    )
    Defendant-Appellant.            )
                                    )

Before:  BATCHELDER, Chief Judge; COLE and COOK, Circuit Judges.

COOK, Circuit Judge.  Gray Dotson appeals his conviction for possession of an unregistered firearm, challenging the reasonableness of the police search under the Fourth Amendment, various evidentiary rulings made by the district court, and the overall sufficiency of the evidence. The panel unanimously agrees that oral argument is not needed. Fed. R. App. P. 34(a). We affirm the district court's judgment.

I.

We review the relevant facts submitted during the suppression hearing and trial. On April 29, 2004, a federal grand jury sitting in the Middle District of Louisiana returned a drug-trafficking indictment against defendant Gray Dotson and a district court issued an arrest warrant. The

indictment culminated a two-year ATF investigation conducted by Special Agents Christian Ladner and Jeff Powell. The agents received information that Dotson was working as a disc jockey at P.T.'s Showclub, a strip club located in Memphis, Tennessee. Shortly before midnight on May 3, 2004, they met with local ATF Special Agents Joey Hall and Joseph Bradley and several officers of the Memphis Police Department (MPD) in front of P.T.'s Showclub. After confirming Dotson's presence inside, MPD officers entered the club, escorted Dotson outside, and turned him over to the custody of Agents Ladner and Powell.

Dotson waived his *Miranda* rights. According to the agents' testimony, Hall then asked Dotson whether he had a vehicle in the club parking lot, to which Dotson replied by pointing at a blue Chevrolet pick-up truck with Louisiana plates. Dotson consented to a search of the truck and consented again after Hall advised him that he could refuse consent to the search. At this point, Hall asked Dotson if the vehicle contained narcotics or firearms, and Dotson replied that they would find a "12 gauge" behind the seat. That said, Hall entered the vehicle and retrieved a sawed-off New England Firearms 12-gauge shotgun. Dotson explained that he kept the gun to protect his wife and son, referring to it as "Junior."

When asked about the truck, Dotson told Hall that he was in the process of purchasing the vehicle from an individual named Jeff. Courtesy of state registration records, the agents linked the vehicle to Jeff Anders. The agents recovered the following items from the vehicle: (1) $4,190 in cash; (2) a Louisiana medical card bearing the name of Dotson's son; (3) a medicine bottle bearing

the same name; (4) a pawn receipt bearing the name of a witness from the Louisiana investigation; and (5) a box with the caption "in loving memory" that appeared to contain human ashes.

Agents Ladner and Powell continued their interview of Dotson at the Shelby County Detention Facility. Dotson reiterated how he came into possession of the gun. He further disclosed that he had previously used the gun to beat an individual named Chico after Chico had threatened Dotson's family. Dotson also provided two explanations for the $4,190 found in the truck, first claiming that he intended to use it to pay for a surgery for his son, but later admitting that he planned to use the money the following day to purchase methamphetamine. Dotson ended the interview after the agents informed him that they would have to contact the U.S. Attorney's Office before offering a plea deal.

On August 17, 2004, a federal grand jury in the Western District of Tennessee returned a new, one-count indictment charging Dotson with the knowing possession of an unregistered firearm. Dotson moved to suppress the evidence obtained from the vehicle search, denying that he consented to it. The district court accepted the government's evidence to the contrary and denied the motion. During a two-day jury trial, Agents Ladner, Hall, and Powell testified to the above events.

Jeff Anders, the truck's registered owner, also testified that Dotson borrowed the truck in early May 2004 to move his family to Memphis. Anders further testified that he removed all items from the truck before loaning it to Dotson, denied owning the sawed-off shotgun, and denied placing the gun in his vehicle.

On May 13, 2009, the jury returned a verdict of guilty. The district court sentenced Dotson

to a term of 55 months' imprisonment, to run concurrently with his undischarged 45-year sentence

that arose from his federal convictions in the Middle District of Louisiana. Dotson timely appealed.

II.

Dotson presents four arguments on appeal. First, Dotson argues that the district court should

have granted his motion to suppress because the warrantless police search of the truck violated his

Fourth Amendment rights. He also complains of error in admitting certain Rule 403 evidence and

excluding certain impeachment evidence. Finally, he challenges the sufficiency of the trial evidence.

None of these arguments has merit.

A.

Dotson's Fourth Amendment argument fails because the suppression hearing evidence

supports the district court's conclusion that Dotson knowingly and voluntarily consented to the

search. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (recognizing voluntary consent

as a "well settled" exception to the Fourth Amendment's requirements); *United States v. Salvo*, 133

F.3d 943, 953 (6th Cir. 1998). The government met its burden by putting forth "'clear and positive'

testimony that the [defendant's] consent was 'unequivocal, specific, intelligently given and not

influenced by any duress or coercion.'" *See id.* at 953 (quoting *United States v. Taylor*, 956 F.2d

572, 588 (6th Cir. 1992) (en banc)). Specifically, Agent Ladner testified during the suppression

hearing that Dotson twice consented to the vehicle search after waiving his *Miranda* rights, the second time after explicit notice that he could deny permission. The district court credited this testimony and denied the suppression motion, noting that the defense had not "impeached [Agent Ladner's testimony] in any way," and that Dotson conceded that he never told the agents not to search the vehicle. The record amply supports the district court's consent conclusion, and Dotson presents no argument contesting it.

B.

Dotson next contends that the district court erred by admitting certain evidence related to the Louisiana indictment. It appears from his brief's background section, as well as the government's response brief, that he contests the district court's admission of evidence regarding certain statements he made on the night of his arrest: (1) conflicting statements about why he had $4,190 in the truck, and (2) his concession about previously using the gun in a fight. We review all evidentiary rulings under the abuse-of-discretion standard. *United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997)). Accordingly, we will reverse only when we "'[are] left with the definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *United States v. Trujillo*, 376 F.3d 593, 605 (6th Cir. 2004) (quoting *United States v. Copeland*, 321 F.3d 582, 596 (6th Cir. 2003)). We find no such error here.

Federal Rule of Evidence 403 permits the district court to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." In assessing Rule 403 challenges, we "must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *United States v. Moore*, 917 F.2d 215, 233 (6th Cir. 1990) (internal quotation marks and citation omitted); *see also United States v. Fifer*, 206 F. App'x 502, 509 (6th Cir. 2006). Without challenging specific evidence, Dotson asserts that "any proof of any matter which is not charged in the instant case, and which makes it more likely than not that he will be convicted in the instant case on evidence which is outside of the instant case, is substantially prejudicial and intended to tilt the jury toward a guilty verdict regardless of proof on the elements required for conviction in the instant case." Yet we have repeatedly recognized that unfair prejudice "does *not* mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988) (internal quotation marks and citation omitted); *see also United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993). "[W]here one party has 'opened the door' on an issue, the opponent, in the trial court's discretion, may introduce evidence on the same issue to rebut any false impression that may have been created by the earlier admission of evidence." *United States v. Chance*, 306 F.3d 356, 385 (6th Cir. 2002); *see also Spikes*, 158 F.3d at 913 (finding that defense counsel's misleading cross-examination opened the door for the limited use of inculpatory

statements that the parties had agreed not to present). Here, we find no abuse of discretion because the defense opened the door for the evidence Dotson now challenges.

With regard to the $4,190 found in the truck, the government did not introduce the challenged evidence—Dotson's statement on the night of his arrest that he intended to use the money for a drug deal—until after defense counsel cross-examined Agent Ladner about whether Dotson had stated that he needed the money for his son's surgery. We find no unfair prejudice because defense counsel opened the door by presenting only one of the two justifications given by defendant. The government had the right to give the jury the omitted response, both for the sake of completeness and for purposes of impugning Dotson's credibility.

We further find that the district court did not abuse its discretion when it included Dotson's statement about having used the gun to administer a beating. The district court initially excluded the government's evidence of this statement, but noted that it might revisit the decision if Dotson contested possession during the trial. Dotson then denied owning and possessing the gun and denied admitting possession of the weapon to the agents on the night of his arrest. After this testimony, the district court permitted the government, over defense counsel's objection, to cross-examine Dotson with his statement about prior use of the gun, and Dotson then denied having made the statement. We agree with the district court that the evidence of Dotson's prior-use statement became relevant when he took the stand and denied possession of the seized weapon, and we find no unfair prejudice.

C.

Dotson next argues that, pursuant to Federal Rule of Evidence 609, the district court should have allowed defense counsel to impeach Jeff Anders with his misdemeanor criminal history. As an initial matter, it is possible that Dotson forfeited this argument by failing to *attempt* to introduce the actual impeachment evidence during the trial. *See, e.g.*, *United States v. Street*, 614 F.3d 228, 235 (6th Cir. 2010) (concluding that defendant forfeited objection to district court's juror-substitution procedure by failing to bring his concerns to the district court's attention); *Mapes v. Coyle*, 171 F.3d 408, 421–22 (6th Cir. 1999) (finding that habeas petitioner forfeited claim of trial court bias by failing to adduce evidence at initial post-conviction proceeding). Without providing specific examples of excluded misdemeanor evidence, Dotson obliquely argues that "[g]eneral prohibitions of use of misdemeanor convictions against a witness should not have been used to prevent impeachment of Jeff Anders' testimony. From our review of the record, it appears that the district court did not exclude the purported misdemeanor evidence, because the defense never proffered specific examples of the misdemeanor evidence. After hearing argument, the district court cited Rule 609 and ruled that the defense *could* use Anders's prior misdemeanor convictions *if* they involved dishonesty or false statements. Given this opportunity, Dotson forfeited this right by then failing to introduce any of Anders's prior misdemeanor convictions during the remainder of the trial.

In any event, the district court did not err by requiring that Dotson show that Anders's misdemeanor convictions involved dishonesty or false statements. Rule 609 prohibits impeachment

of a non-party witness with prior convictions except in two circumstances: (1) if the prior conviction was a felony; or (2) if it is a conviction that includes as an element of the offense "proof or admission of an act of dishonesty or false statement." Fed. R. Evid. 609(a); *see also United States v. Hines*, 398 F.3d 713, 716 (6th Cir. 2005). Here, Anders had not been convicted of any felonies and there is no evidence on the record that any of his prior misdemeanors involved acts of dishonesty or deceit as an element of the offense. And Dotson does not city to any authority, and we know of none, that would allow Rule 609 impeachment based on the facts of this case. At most, Dotson has shown that the district court properly summarized the applicable evidentiary rule, the antithesis of an abuse of discretion. We find no error.

D.

We review de novo the district court's denial of a motion for judgment of acquittal. *United States v. Kuehne*, 547 F.3d 667, 677 (6th Cir. 2008) (citing *United States v. Zidell*, 323 F.3d 412, 420–21 (6th Cir. 2003)). We review sufficiency-of-the-evidence claims to determine whether "any rational trier of fact could find the elements of the crime beyond a reasonable doubt," and, in doing so, view "the evidence in the light most favorable to the prosecution, . . . giving the government the benefit of all inferences that could reasonably be drawn from the testimony." *United States v. M/G Transp. Servs., Inc.*, 173 F.3d 584, 589 (6th Cir. 1999) (emphasis omitted) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Defendants asserting such claims "bear[] a very heavy burden," *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986) (internal quotation marks and citation

omitted), and an appellate court will only set aside the judgment if, after viewing the record as a whole, it determines that "the judgment is not supported by substantial and competent evidence." *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991).

An unregistered firearm conviction requires proof that the defendant "receive[d] or possess[ed] a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d); *United States v. Daniel*, 134 F.3d 1259, 1263 (6th Cir. 1998). Dotson challenges only the government's proof of possession, citing cases holding that a defendant's mere proximity to a weapon as a passenger in a car does not establish possession. *E.g.*, *United States v. Soto*, 779 F.2d 558, 560 (9th Cir. 1986); *cf. United States v. Birmley*, 529 F.2d 103, 107–08 (6th Cir. 1976) ("Presence alone cannot show the requisite knowledge, power, or intention to exercise control over the unregistered firearms."). An appellate court will, however, sustain an unregistered firearms conviction where the government presents sufficient evidence of constructive possession. *Daniel*, 134 F.3d at 1263.

"Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977). "Proof that 'the person has dominion over the premises where the firearm is located' is sufficient to establish constructive possession." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998)

(quoting *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993)). At a minimum, "'the government must present evidence to show some connection or nexus between the defendant and the firearm,' which can be established by a showing that the defendant had 'knowledge and access . . . [to the] firearm.'" *United States v. Bailey*, 553 F.3d 940, 945 (6th Cir. 2009) (quoting *United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir. 2007)) (emphases omitted).

The evidence adduced at trial demonstrated that Dotson had knowledge of and access to the firearm such that a rational trier of fact could find that he possessed the unregistered shotgun. Agents Ladner, Hall, and Powell each testified that Dotson claimed possession of the blue Chevrolet pick-up truck in the parking lot of P.T.'s Showclub. After twice consenting to Hall's search of the vehicle, Dotson told Hall that he would find a "12 gauge" behind the vehicle's seat. After recovery of the gun, Dotson explained that he kept the gun as protection for his wife and son. He further added that he once used the gun to administer a beating.

Dotson argues that, because the government did not show that he owned or possessed the truck, the government has not met its burden. But we only consider whether the government presented sufficient evidence that he possessed the gun, not the truck. Considering the evidence in the light most favorable to the government and drawing all reasonable inferences in the government's favor, we conclude that a rational factfinder could find beyond a reasonable doubt that Dotson possessed the unregistered firearm.

III.


We AFFIRM the district court's judgment.